Chicago, Indianapolis and Louisville Railway Co.

*v.*

Herbert S. Barr, Admr.

204   163
d111a¹479

*Opinion filed October 26, 1903.*

1. Railroads—*when company is not liable for a switchman's death.* A railroad company is not liable for the death of a switchman caused by his unsuccessful attempt to climb in a hazardous manner to the top of the tender on a backing switch engine to perform an unnecessary act not among his usual duties nor required by any emergency or command.

2. Same—*effect of failure to provide ladder on tender of switch engine.* Failure of a railroad company to provide a ladder on the rear of the tender of a switch engine does not render the company liable for the death of a switchman who attempted to climb to the top of the tender in some other way, where it is not shown the employee needed such a ladder in the discharge of his duties.

*C., I. & L. Ry. Co.* v. *Barr*, 107 Ill. App. 111, reversed.

Writ of Error to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. Philip Stein, Judge, presiding.

G. W. Kretzinger, for plaintiff in error.

James C. McShane, for defendant in error.

Mr. Justice Cartwright delivered the opinion of the court:

Charles M. Campbell was run over and killed by a switch engine of plaintiff in error in its railroad yard at Hammond, Indiana, on July 13, 1897, while in its employ as a switchman. Defendant in error was appointed administrator of his estate, and brought suit in the superior court of Cook county to recover damages for his death under a statute of Indiana giving a right of action to the personal representatives of one whose death is caused by the wrongful act or omission of another. Upon a trial there was a verdict and judgment for $5000, and the Appellate Court for the First District affirmed the judgment. The writ of error in this case was sued out to review the judgment of the Appellate Court.

The defendant offered no evidence at the trial, but at the conclusion of the evidence introduced by the plaintiff moved the court to direct a verdict of not guilty. The court denied the motion and refused to give the instruction tendered with it, and the ruling is assigned as error.

The declaration contained three counts. The first alleged that the deceased was employed by defendant as a switchman; that defendant had a switch engine, upon the rear end of which it provided and maintained a foot-board for switchmen to stand upon; that switchmen were frequently required, in the discharge of their duties, to reach or climb from the foot-board to the top of the tender while the engine was in motion; that defendant

failed to furnish a sufficient handrailing upon the rear of the engine by which they could hold while attempting to climb to the top of the tender, and that deceased, while attempting to climb to the top of the tender, and exercising ordinary care, while the engine was in motion, by reason of the failure to provide a sufficient handrailing, fell off and was run over. The second and third counts contained substantially the same averments, charging as negligence the failure of defendant to equip the rear end of the tender with a ladder for switchmen to climb to the top while the engine was in motion. The plea was the general issue.

There was but one witness who knew anything about the accident, and there was no conflict whatever in the evidence, which was all offered by the plaintiff. The facts which the evidence tended to prove are as follows: The deceased was thirty-eight years old, and had worked as a switchman for fifteen years. He had been accustomed to working in switch yards and in various places, switching cars, and had been employed by defendant as a switchman for more than a year. At six o'clock on the morning of July 13, 1897, he went to work at Hammond, Indiana, with a fellow-switchman, Frank Stowman. The switch engine which they worked with had been a small road engine, which had been converted into a switch engine about a year before, by removing the pilot and putting a foot-board at each end. The foot-board at the rear was about twelve inches wide, extending across the tender, and from twelve to eighteen inches above the rail. The distance from the foot-board to the top of the tank was about six feet. Upon the rear of the tender, about three feet above the foot-board, there were two iron handrails or grab-irons, about eighteen inches long, running crosswise and extending within two inches of the sides, for switchmen to hold by while riding on the foot-board. There was a draw-bar in the center of the tender of what is called the "nigger-head" style. The

draw-bar was fastened to the tank by four bolts. The tank was of sheet-iron, with a leaf or flange nine or ten inches wide at the top, making a flaring top. There was no ladder on the rear of the tender, and nothing above the handrails to hold on to in attempting to climb the smooth sheet-iron tank. It was impossible to reach the top of the tank and keep one foot on the foot-board. A switchman could not hold the grab-iron and at the same time reach the top of the tender. If he put his foot on the draw-bar he would have to let go of the grab-iron and make a spring, and if he got hold of the top he would then have to spring up, and, striking his body on the edge of the tender, get over on top. Campbell had no considerable work on the engine during the day but worked in the field as end man, while Stowman followed the engine. The accident occurred in broad daylight, about 4:30 in the afternoon, and Campbell had been working with the engine, in switching, for nine or ten hours. Stowman was the only one who saw the accident. He was standing on the left-hand side of the foot-board, and the engine was backing north on track No. 2. The place where it was going was about thirty car lengths distant. The engine came to almost a stop to take Campbell up, and he stepped on the foot-board on the right-hand side. He had a green flag in his hand, which was used on the main line of the road to denote the rear of a train but which there was no use for in the yards. After Campbell got on the foot-board he gave a signal to the engineer to back up, and the engineer backed on north. Campbell then asked Stowman where he put the flag. Stowman testified: "I told him, 'Why, I put the damned thing up there—any old place.' I told him I always put it in that box." There was a box on the tank behind the man-hole, about three feet from the rear of the tank, in which the switchmen kept their belongings, such as flags and lanterns. They would get the lanterns in the evening and trim and fill them for use at night, and flags

were put there when not in use.  Campbell turned around
and faced the tank and said he would put the flag where
it belonged.   He took hold of the grab-iron and put his
foot on the draw-bar, apparently to climb up on the tank.
Stowman supposed that he tried to get up, but did not
look at him and did not know what then happened.  The
next thing he saw of him he was on the track in front of
the tender and was run over.   Stowman testified that if
he got up that way he always stepped on one of the bolts
of the nigger-head, and then had to take a little spring
to reach the top of the tank.   Stowman was five and a
half feet in height and Campbell was about the same
height.  Another switchman testified that when he went
to get from the foot-board to the top of the tender he
was careful, and used to get a hand from the fellow
above, and that if he put his foot on the draw-bar he
could not reach the top of the tender with his other hand
but would have to make a jump.   The absence of a lad-
der was open and visible, and there was no latent or
concealed defect or imperfection about the tender.

There can be no dispute about the law.   It was nec-
essary for the plaintiff to prove that at the time of the
accident Campbell was in the discharge of his duty to
the defendant as a switchman, and that he was in the
exercise of ordinary care for his own safety.   If there
was no evidence tending to prove the exercise of such
care on his part, and if the undisputed facts proved that
he was not performing any duty required of him under
the circumstances and when the engine was in motion,
and that he knowingly and voluntarily undertook to
climb to the top of the tender in a manner likely to
result in injury or death, the court erred in denying the
motion.  Although the trial court refused to give the in-
struction directing a verdict, an instruction was given
on the submission of the case to the jury, advising them
as to the law, that although there was no ladder on the
rear of the tender, if the absence of the ladder was open

and known to the deceased, and yet, having knowledge thereof, he attempted to climb to the top of the tank, and by reason, thereof fell, the verdict should be for the defendant. There was no controversy about the facts, and no possible doubt that Campbell knew there was no ladder on the rear of the tender or other means of climbing up the back end. It would be impossible for the jury to draw any inference from the evidence that he supposed there was a ladder there, or that its absence was not open or apparent or known to him. He was not attempting to climb some imaginary ladder which he supposed was there, but he attempted to climb up by putting his foot on the draw-bar, and with his other hand on the grab-iron probably attempted to make a jump or spring to the top of the tank. Counsel for defendant in error concedes that he undoubtedly saw that there was no ladder or hand hold on the back end of the tender and saw the kind of grab-irons that were upon the tender. There was no command or requirement of defendant that he should encounter such a danger. Even his associate merely told him that he put the thing up there—any old place; that he always put it in the box. Lanterns were put in the box, but the only occasion to get them would be at night to get them ready for use, when they were used during the night and put in the box during the day. There was safe access to the box on the tender from the front, and there was no evidence tending to show that switchmen were required to climb over the rear of the tender in the morning to put lanterns in the box or at night to take them out. Flags were put in the box, but they were not used in switching in the yards. The flags were used on the road to denote the rear of a train, and when the switch engine came into the yards there was no further use for them. If it was necessary to put a flag in the box when not in use, the commonest prudence would require it to be done when the engine was standing still, or else in some other way than the one adopted in this case. The

engine had practically stopped when Campbell stepped on the foot-board, and he signaled the engineer to start, and afterward attempted to climb the smooth sheet-iron surface at the back of the tender while the engine was in motion and when there was no necessity or emergency requiring such an act. He had as absolute and perfect knowledge of the absence of the ladder and of the danger as he could have had with any explanation or warning by the defendant. He was an experienced switchman, but no person could fail to know and understand the danger involved in the attempt which he made. It would be a mere contradiction to say that he knew he was liable to fall and be run over but did not understand or appreciate the risk or danger. The sole occasion of the accident was the unnecessary attempt to reach the top of the tender when the engine was in motion, in the hazardous manner proved by plaintiff's witnesses, where failure would undoubtedly result in injury or death. There was no evidence tending in the slightest degree to prove that defendant required switchmen to deposit flags in the box while the switch engine was in motion, by climbing up the back end of the tender, or that there was any occasion, at any time, for a switchman to make such an attempt. There was evidence tending to show that on the main line, when hauling a train of cars, a switchman would sometimes have to come forward over the cars upon the tender to communicate with the engineer, but in such a case he did not climb up the rear of the tender, and there was nothing showing the slightest necessity or any requirement of the defendant that a switchman should ever get on the tank in that way. The evidence did not tend to prove a cause of action, and the court erred in denying the motion and refusing to give the instruction.

The judgments of the Appellate Court and the superior court are reversed.          *Judgment reversed.*