Belt Ry. Co. v. Confrey.

|111    473|
|a209s 344|

# The Belt Railway Company of Chicago v. William F. Confrey.

### Gen. No. 10,993.

1. GRAB-IRONS—*when declaration is broad enough to support evidence relating to.*  A declaration in an action for personal injuries suffered while in the act of coupling cars, is broad enough to admit evidence of the absence of a grab-iron and evidence describing the same and showing its function, where such declaration alleges that the " draw-bar and appliances and devices necessary and used for and in aid of coupling (on this car) were in a dangerous, defective and unsafe condition," and that by reason of the divergence of the draw-bar, and by reason of the negligence of the defendant in permitting said car to be and remain in said defective condition, the plaintiff was injured.

2. INSPECTION—*duty of master as to.*  It is the duty of a railroad company to use reasonable care in the inspection of cars coming into its yard to discover and mark defects therein which might endanger the life or limbs of its employees, and for injuries resulting to such employees from defects which would be disclosed by a reasonable and careful inspection, it is liable; but for latent defects which cannot be discovered by such inspection, it is not responsible.

3. PEREMPTORY INSTRUCTION—*when ground for, is waived.*  Where a defendant to an action for personal injuries has caused the court to submit to the jury a particular proposition as one fact, it cannot thereafter urge such proposition as a reason why the court erred in refusing to grant a peremptory instruction.

4. PEREMPTORY INSTRUCTION—*when properly denied.*  Held, in this case, where the injury resulted while the plaintiff was coupling cars, that it was not error to refuse peremptorily to instruct the jury for the defendant.  (C., I. & L. Ry. Co. *v.* Barr, 204 Ill. 163, distinguished.)

5. REMARKS OF TRIAL COURT—*when improper.*  Where the trial judge by his remarks minimizes the evidence of a witness and states as a fact a matter which is in dispute, he commits error.

6. REMARKS OF TRIAL COURT—*error in, how preserved.*  To avail of impropriety in the remarks of the trial judge, it is essential that they should be objected or excepted to.

Action on the case for personal injuries.  Appeal from the Superior Court of Cook County; the Hon. GEORGE W. PATTON, Judge, presiding. Heard in this court at the October term, 1902.  Affirmed.  Opinion filed December 21, 1903.

EDGAR A. BANCROFT, for appellant.

JAMES W. DUNCAN and C. LEROY BROWN, for appellee.

**Statement by the Court.** Appellant is a belt line extending from Cragin on the north to the west, south and east, partly enclosing Chicago, and thus connecting with all the trunk lines entering the city. Its only business is that of transferring freight cars from one of these lines to any other of them. The cars handled by appellant comprise every kind of freight car and every style of couplers in use by the railroads. Appellant's north yard is situate at Cragin. It consists of eleven tracks, each one-third of a mile in length, running north and south—all of which are connected at each end by a lead track. These switch tracks were numbered from. 1 to 11, from east to west. In this yard the cars of each train received were separated according to their destination, by being shunted upon the proper tracks. Before this distribution was begun an inspector examined each car in the train to discover its condition. The inspector kept a record of all defects discovered, and noted the defect, if any, upon the car itself, and upon each car marked its destination. There were two switching crews at work in this yard. Appellee was a member of the north switching crew, and had been so employed for nine months before his injury. He had been a switchman for twelve years, and was therefore fully acquainted with the dangers of his employment. The night before the accident a freight train had been run in on switch track No. 8. It was there inspected and the cars marked for their several destinations. In the morning the crew, of which appellee was one, pulled this train out upon the lead track, and then backed south, throwing the first car cut off on lead track No. 1. Appellee, in performance of his duty as switchman, mounted this detached car, and stopped it when it was fully on the lead track. The next car cut off was sent into switch track No. 2. Leaving the south part of the train on the last named track, the engineer set a loaded grain car back on switch track No. 8. While this was going on, appellee walked from track No. 1 to track No. 2. Coming north upon track No. 2 were six fugitive coal cars, four of them being coupled together, but the two to the north were run-

ning separate from each other and from the four south cars. The north one of these cars was going at a walk, and the others at a little higher rate of speed.    As the moving cars approached each other appellee coupled them together. The north coal car was equipped with an automatic coupler known as the "Janney," "Tower" or "Master car builder" coupler.    This coupler has a general resemblance to the human hand, the thumb and fingers being slightly bent towards each other, but with a space between them, the hand being held with the little finger down and the thumb and fingers horizontal to each other.    That part represented by the fingers is called the "knuckle;" it swings laterally on a pivot—opens and closes.    Horizontally across this knuckle is a slot to receive the link, when the automatic coupler is connected with an old fashioned draw-bar.    This slot is four inches long (horizontally) and two inches wide. The standing car was equipped with the old-fashioned draw-bar.    The opening in this draw-bar to receive the link is about five by seven inches.    Appellee came up to the standing car as the moving cars reached it, and stepped in between to couple them.    He attempted to insert the link of the draw-bar in the slot of the knuckle of the automatic coupler, but did not succeed.    When the two couplers came together they first met and then passed each other.    Before he could extricate himself his left arm between the wrist and elbow was crushed and one or more of his ribs were broken. It is claimed by his counsel that if the standing car had been equipped with a grab-iron he could have pulled himself out of danger without injury.    Counsel for appellant assert that this car had a proper grab-iron.    Upon this question there is direct conflict in the evidence.    This appliance is a short iron bar standing one and one-half to two inches out from the face of the end of the car about breast high.    It is also claimed that the play of the shaft of the draw-bar of the stationary car was unusual and dangerous, and that this defect allowed the couplers to pass by each other.    This point is also in dispute in the evidence.    The accident happened August 27, 1899, about 10:30 A. M.    The day was clear and bright.

The first count of the original declaration, filed April 18, 1900, alleged that the draw-bar and coupling appliances of the stationary car were in a dangerous and defective condition, and that while the plaintiff was coupling cars " the draw-bar of the aforesaid car, which the defendants as aforesaid had carelessly and negligently allowed to be in a dangerous and defective condition, diverged from its natural position in connection with the draw-bar of the car to which it was being attached, and thereby, etc., the two cars between which the plaintiff was working as aforesaid, violently came together," etc. The second count charges negligent inspection, and by reason thereof defendants " failed to discover that the draw-bar and coupling appliances * * * were in a dangerous and defective condition * * * upon which the said draw-bar by reason of its dangerous and defective condition, diverged," etc., etc. The third count alleged that the draw-bar and coupling appliances of this car were in a dangerous and defective condition, which plaintiff did not know and defendants could have known, etc., and that while plaintiff was engaged in coupling this car to another car " the said draw-bar diverged from its natural position," etc.

The plea of the general issue was filed.

April 19, 1901, two additional counts were filed, the first of which alleged that defendants carelessly failed to see and negligently handled " said car upon which the draw-bar and appliances and devices necessary and used for and in aid of coupling were in a dangerous, defective and unsafe condition," etc., by reason whereof, etc., " the two cars * * * violently came together" and, thereby, " and by reason of the negligence of the defendants in permitting the said car and the said appliances and devices necessary and used for and in aid of coupling to be and remain in an unsafe, dangerous, incomplete and defective condition," etc., the plaintiff was injured, etc. The second one charges that defendants negligently omitted to inspect this car and the draw-bar and appliances and devices necessary and used for and in aid of coupling said car, and failed to warn plaintiff

that the same were unsafe, dangerous, incomplete and defective, and while plaintiff, etc., the draw-bar of said car which defendants had carelessly and negligently allowed to be in a dangerous and defective condition diverged from its natural position in connection with the draw-bar of the other car, and thereby the two cars violently came together, etc., and thereby and by means of the said negligence of the defendants, the plaintiff was caught, etc.

To these additional counts the plea of the general issue was filed, and also a plea of the statute of limitations to each count. Issue was joined on the first plea, and demurrers were filed to the special pleas. These demurrers were sustained; to which order defendants excepted.

Trial was had in June, 1902. The jury found appellant guilty and assessed appellee's damages at $10,000. A motion for new trial was interposed and overruled, and judgment was entered upon the verdict. From that judgment an appeal was perfected to this court.

The original declaration joined the Chicago & Western Indiana R. R. Co. as a defendant. On the trial the suit was dismissed as to this defendant.

MR. JUSTICE BALL delivered the opinion of the court.

Appellant claims that evidence relating to the grab-iron was a variance from the declaration. The additional counts allege that the " draw-bar and appliances and devices necessary and used for and in aid of coupling (on this car) were in a dangerous, defective and unsafe condition," and that by reason of the divergence of the draw-bar and by reason of the negligence of the defendants in permitting said car to be and remain in said defective condition, appellee was injured. This allegation is broad enough to let in evidence describing the grab-iron and its use, if any, in coupling cars.

It was the duty of appellant to use reasonable care in the inspection of the cars coming into its yard to discover and mark defects therein which might endanger the lives or limbs of its employees. It was also its duty to handle all cars delivered to it which appear to be in ordinarily safe

and proper condition; and its employees took upon themselves the risk of working with and about such cars. Appellant is not responsible for latent defects which cannot be discovered by the exercise of reasonable care in inspection, (Sack v. Dolese, 137 Ill. 129; Colfax Co. v. Johnson, 52 Ill. App. 383; I. C. Ry. Co. v. Barslow, 55 Ill. App. 203,) but is liable for all damages coming to its employees from defects which would be disclosed by a reasonable and careful inspection. There is much conflict in the evidence as to the amount of lateral play of the draw-bar upon the stationary car; and as to whether or not it was in the same condition on the day of the accident as when originally constructed; and as to whether or not the defect, if any, was dangerous, and discoverable by appellant by the use of reasonable care. Each of these propositions was a fact to be determined by the jury upon the evidence.

The second contention of counsel is that the court erred in refusing peremptorily to instruct the jury to find for the defendant, because the plaintiff was relying for a recovery on the absence of the grab-iron, which had not been charged in the declaration; and, also, because the evidence wholly fails to show that plaintiff's injuries were due to any breach of duty by the defendant.

The first ground is answered by what has been said concerning the additional counts of the declaration. As to the second ground, appellant tendered to the court and the court gave to the jury instructions concerning its duty as to reasonable care in the premises, and as to the duty of appellee to use due care for his personal safety. As we read the case of Chicago Terminal Ry. Co. v. Schmelling, 197 Ill. 625, the appellant, by such instructions, is estopped from urging this action of the court as constituting reversible error. The Supreme Court there say:

"Inasmuch as the plaintiff in error asked and the court gave, an instruction which left it to the jury to take into consideration the fact, if it was a fact, that the defendant in error alighted from the train while it was in motion, in determining whether he was in the exercise of due care and caution for his own safety, it cannot be urged now and

here by the plaintiff in error, that such fact was negligence *per se*, or negligence as matter of law."

In this connection counsel for appellant claim that it was the appellee's own want of care in making the coupling which caused his injuries, in this, that he did not see the lack of a grab-iron until after he had "grabbed for it," although he approached and passed right by the place where it should have been.   Among the cases cited in support of this proposition is that of C. I. & L. Ry. Co. v. Barr, 204 Ill. 163.   There the deceased, a switchman, attempted to climb up the rear of the tender of a moving engine in order to put a flag in a box standing on the top of the tender.   There was no ladder or other safe means provided for climbing up the rear of the tender.   No immediate necessity required the deposit of the flag in the box.   The deceased saw the whole situation, and yet made the attempt to scale the rear of the tender while it was in motion; and thus, through his own negligence, lost his life.   The Supreme Court held that the evidence did not tend to prove a cause of action, and therefore the trial court erred in denying the motion to take the case from the jury, and in refusing to give the instruction tendered with it.   We do not think the case is like the one at bar.   Here appellee, when he came to track No. 2, found six cars approaching the stationary car.   It was his duty to make three couplings before they came together.   Two of these couplings took so much time, although the north-bound cars were coming slowly, that he had just time and opportunity, as he claims, to go between them and the stationary car at the moment they came together.   In the Barr case the deceased was not hurried.   He was riding upon the footboard of the tender.   He saw the condition of the back of the tender and the meager and insufficient aids it afforded him.   To us the case of I. C. Ry. Co. v. Sanders, 166 Ill. 270, is more nearly in point.   There the plaintiff was injured by slipping and falling while attempting to couple two cars.   It was urged that he was negligent.   The Supreme Court answer this argument by saying:

"But it is said that the defective track and cattle-guard were in plain view, and might have been seen by the plaintiff had he looked. The coupling of cars is a dangerous service. The work has to be done instantly when the cars come together. A slight misstep or a false movement upon the part of the brakeman may expose his life or limbs to danger. Hence it is apparent that when a brakeman undertakes to make a coupling he has no time to investigate the track and determine whether it is defective or safe. His whole attention is directed to the cars coming together and the dangerous act he is required to perform, and it cannot be expected that he will stop in the performance of his duty to examine the condition of the track."

The third contention of appellant is that the trial court erred in the giving and the refusing, and in the modification of instructions.

Without extended argument counsel objects to each of the instructions tendered by appellee and given by the court to the jury. We find that the first is approved in Taylor v. Felsing, 164 Ill. 332; the second in C. M. & St. P. Ry. Co. v. O'Sullivan, 143 Ill. 51; the third is approved in substance, in W. Chicago Ry. Co. v. Lieserowitz, 197 Ill. 611; the fourth in Eastman v. W. Chicago St. Ry. Co., 79 Ill. App. 586; the fifth in N. Chi. St. Ry. Co. v. Fitzgibbons, 180 Ill. 469; the sixth in N. Chi. St. Ry. Co. v. Kaspers, 186 Ill. 250; the seventh in I. C. Ry. Co. v. Cole, 165 Ill. 337; and the eighth in C. B. & Q. Ry. Co. v. Warner, 108 Ill. 545.

The instructions given upon the request of appellant state fully what appellee was bound to prove in order to recover, and set forth clearly what the issues were in the case.

We have carefully examined the modifications of the instructions presented by appellant and given as modified to the jury. In none of them is reversible error. Nor did the court err in the refusal of appellant's tendered instructions numbers 1, 2, 3, 4 and 17.

The fourth contention of appellant is that the court made improper remarks during the trial, which tended to prejudice its case with the jury. We have examined the several instances cited by counsel, and find but one which violates

the rules of legal propriety. The witness Lovejoy upon cross-examination had stated: " The grab-iron is not any part of the coupling appliance by which the cars are physically fastened together, no more than the ladder or the brake on the car;" when the court interrupted with, " I think anybody can see that. These twelve men can see that as well as anybody. It is a part of the general appliances." This is plainly a comment upon the evidence pertaining to a disputed question in the case. By it the court minimizes the evidence of the witness, and tells the jury that the grab-iron is a part of the general appliances used in coupling cars. In so speaking the court erred; but whether these remarks were proper or improper is a question that cannot be raised here, because they were neither objected nor excepted to at the trial. Lanquist v. City of Chicago, 200 Ill. 71.

The fifth contention of appellant is that the evidence does not support the verdict. Without discussing the testimony in detail, we content ourselves by saying that we have studied this record long and carefully, and have come to the conclusion that there is sufficient evidence, if believed by the jury, to sustain this verdict and judgment.

The judgment of the Superior Court will be and is affirmed.

*Affirmed.*