# Thomas Knox, Appellee, v. Illinois Steel Company, Appellant.

## Gen. No. 16,094.

1. PLEADINGS—*when recovery cannot be had upon declaration charging failure to furnish safe place.* If the declaration is predicated upon the alleged negligence of the defendant in failing to fasten the slabs of a platform upon which the plaintiff was working, there must be evidence that it was physically possible or practicable to fasten such slabs.

2. MASTER AND SERVANT—*when doctrine of assumed risk applies.* When an employe has the power to adopt his own method of doing work and he voluntarily selects, of two ways, the more dangerous, he does it at his peril and cannot recover for an injury resulting from such selection.

Knox v. Illinois Steel Co., 167 Ill. App. 279.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the HON. ARTHUR H. CHETLAIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed. Opinion filed February 6, 1912. Rehearing denied February 20, 1912.

**Statement by the Court.** Thomas Knox, appellee, brought this action in the Superior Court against the Illinois Steel Company, appellant, to recover damages for injuries which he received on August 17, 1903, while in the employ of appellant.

The declaration consists of two counts. The first count alleges that the plaintiff was in the employ of defendant in its slab mill, where there was a certain platform of iron or steel slabs alongside of which the defendant was accustomed in the prosecution of its work to lower or drop ingots; that the platform was not reasonably safe for the plaintiff to work upon or about when raising ingots from off or near the same, and that it was practicable to have so fastened the slabs that they would not jump, shift or move from their proper position; that not regarding its duty it negligently failed and neglected to so fasten or secure the slabs that a certain large ingot, weighing six tons, was dropped upon or close to the platform, whereupon it became the plaintiff's duty to assist in raising the ingot, and as a result thereof certain of the slabs composing the platform were caused to suddenly and violently jump, shift or move from their proper positions, and one of the slabs struck against and fell upon plaintiff's right foot.

The second count is the same as the first in matters of inducement, and alleges that the plaintiff did not know of the dangers to which the condition of the platform exposed him; that the defendant knew or by the exercise of ordinary care in that behalf would have known that the plaintiff did not know the conditions and understand the dangers to which it exposed him, and that by reason thereof it became the duty of the

defendant to have informed the plaintiff of the conditions and to have warned him of the dangers; but, not regarding its duty, it then and there negligently failed and neglected to so inform or warn. the plaintiff, and as a result thereof the injury to the plaintiff occurred in the manner set forth in the first count.

The case was tried upon the issues made by defendant's plea of the general issue to the counts of the declaration.

For about four years prior to the accident the plaintiff had worked in the slab mill of the defendant. Three years of that time he had worked about the machinery, and for a year prior to the accident he had worked as heater helper. For two weeks prior to the accident he had worked as a heater during the absence of the regular man working in that capacity. On several occasions prior thereto he had worked as a heater in place of the regular heater.

The slab mill was about one hundred feet square. On the east side of the mill were the heating pits or soaking pits. Ingots would be placed in these pits by means of an overhead crane, and would remain there subject to the heat of the gas flame until the temperature was raised to the proper degree for rolling. The pits ran north and south.

Just to the west of these pits there was a raised brick walk supported by channel or angle irons. The uprights that supported this walk were about two and one-half feet apart in a line running north and south. Upon this walk the heaters and helpers would stand and pass while attending to the ingots that were in the soaking pits. The slab platform consisted of three slabs of steel. Each slab was about thirty inches wide and from three to four inches thick, and twelve to fourteen feet long, and weighed about 2,200 pounds. When in position the long way of the slabs was north and south. The east side of the east slab was up flush against the channel or angle irons supporting the walk,

which was just to the west of the soaking pits. The level of the walk was ten to twelve inches above the level of the slab platform. The adjoining slabs of the platform when in position touched each other. The slabs of this platform rested upon three tiers of rails. The rails in these tiers were about twelve inches apart. The bottom tier of rails rested upon the floor of the building and ran east and west. The middle tier of rails rested upon the bottom tier of rails and ran north and south. The top tier of rails rested upon the middle tier and ran east and west. Upon the top tier of rails the three slabs composing the slab platform rested. The rails extended out about two or three inches beyond the west side of the west slab. Immediately to the west and south of the slab platform was an open space paved with brick extending about forty feet to the west. The slab platform was about ten or twelve inches above the brick floor to the westward. Immediately to the north of the slab platform was a tilter which was at the south end of a train of table rolls. The tilter was tilted at its lower end inclining at an angle of about 45 degrees towards the north.

When an ingot was at the proper temperature a heater or his helper, both of them working together, signalled the crane man, who would run his crane over the pit, and the crane mechanism would be lowered and by means of a tong arangement the ingot would be grasped by the crane and hoisted out of the pit. The ingot would then be carried over to the tilter and placed in the tilter, the crane releasing the ingot. It was the duty of the heater and his helper to see that the ingot properly got to its proper position in the tilter, and then as far as the heater or his helper were concerned their work on the ingot was finished.

When the ingot had been placed in the tilter the upper end of the tilter was lowered and as the upper end of the tilter was lowered the upper end of the ingot would lower until the end of the tilter would pass be-

tween the table rolls, when the operation of the rolls would engage the ingot and the ingot would be run to the north along the table rolls until it arrived at the rolls proper where the ingot would be rolled into its proper slab shape.

It was a matter of frequent occurrence for an ingot to drop from the crane. Sometimes an ingot would drop upon the slab platform, sometimes between the platform and the pits, and sometimes back into the pits. The ingots varied in size and weight from four tons to ten or twelve tons.

Prior to the construction of the slab platform, about a year before the accident here in question, the dropping of the ingots had resulted in serious damage to the brick work of the flues, by means of which the gas was conducted to the soaking pits. The brick flues ran under the floor upon which the slab platform was constructed. The force of the impact of the dropping of twelve ton ingots had resulted in such injury to this brick work that the expedient of protecting it by means of the slab platform was adopted.

On the morning of the accident plaintiff had started to work at what is known as the manipulator, which was part of the mechanism of the rolls whereby the steel as it comes through the rolls was mechanically turned so that when it was to pass through the roll again it would be in the proper position for subsequent rolling. He had been ordered by the superintendent to discontinue work at the manipulators and to go down to the pits as a heater. He started down along the west side of the table rolls and at that time saw the crane carrying the ingot over to the slab platform and tilter to place it on the tilter. When a little to the north of the crane he saw the ingot drop from the crane. The ingot when it dropped from the crane fell upon the slab platform striking on the middle slab, and, falling to the west, dislodged the west slab at the north end so that the north end was out eighteen inches

to the west of its proper position, leaving a space of about eighteen inches between the east side of the west slab and the west side of the middle slab. The ingot as it lay there after having fallen rested partly on the slab and partly on the floor to the west. Knox, having been assigned to the duty of heater, directed his helper Grunhard to get the fishing tongs to assist in lifting the ingot so that it could be placed in the tilter. The position of the ingot was such that the crane could not reach it, so the so-called fishing tongs being longer than other were attached to the ingot by Grunhard and Knox. The chain attached to the fishing tongs was then attached to the lift of the crane. Knox stepped away from the ingot about ten feet to the south, and standing in a position about four feet to the west of the west slab which was then out of position, gave a signal to the crane man to hoist. The raising and pulling in of the ingot to the east swung the north end of the west slab to the east, and necessarily the south end of the slab to the west, and plaintiff was struck by the south end of the slab and injured. Immediately upon this happening the crane man lowered the ingot and the weight of the ingot on the north end of the slab raised the south end of the slab and released the plaintiff, Knox.

KNAPP & CAMPBELL and WILLIAM BEYE, for appellant.

JOHN C. KING and JAMES D. POWER, for appellee.

MR. JUSTICE F. A. SMITH delivered the opinion of the court.

At the close of the plaintiff's evidence, and at the close of all the evidence, defendant's motion for a directed verdict was denied. Defendant presented instructions as to each count of the declaration, directing the jury to find the defendant not guilty as to each

count, which the court refused. The jury returned a verdict of $15,000, on which judgment was entered after defendant's motion for a new trial had been overruled; and the case is in this court on appeal from that judgment.

It is the contention of defendant, appellant, that the court erred in not directing a verdict as to each count of the declaration; in overruling defendant's motion for a new trial; in erroneously instructing the jury as to the amount of damages; and in improperly refusing and modifying instructions asked by the defendant.

The negligence averred in the first count of the declaration is that the defendant failed to fasten the slabs of the platform. The defendant at the trial requested an instruction that the jury find the defendant not guilty as to this count. This instruction was refused. Recovery can be had upon this count only upon the negligence charged therein. C. & E. I. R. R. Co. v. Driscoll, 176 Ill. 330. There is no word of evidence in the record showing or tending to show that it was practicable or physically possible to fasten the slabs, or what it was possible or practicable to fasten them to in order to make the platform safer. There is no claim on the part of appellee that there is any evidence upon this subject. On the contrary it is argued on behalf of appellee that it was not necessary that any evidence should have been introduced to show that it was practicable to fasten the slabs; that the construction of the platform was of such a simple character that the jury could pass upon that question in the absence of evidence. With this contention we cannot agree. The rule of law in respect to the burden of proof in a suit by a servant against his master for injuries resulting from defective machinery or appliances is stated in Wood on the Law of Master and Servant, Sec. 414, as follows:

"The servant, in order to recover for defects in the appliances of the business is called upon to establish

three propositions: 1st, That the appliance was defective; 2nd, That the master had notice thereof, or knowledge, or ought to have had; 3rd, That the servant did not know of the defect, and had not equal means of knowing with the master.''

This is the settled law of this state. Goldie v. Werner, 151 Ill. 551; Armour v. Brazeau, 191 id. 117, 126; Sargent Co. v. Baublis, 215 id. 428, 432, 433; Montgomery Coal Co. v. Barringer, 218 id. 327, 329. If it was not practicable to fasten these heavy slabs to the foundation of the platform so that they would not be broken loose by the falling of large ingots upon them, the defendant was not negligent in allowing the slabs to remain without being fastened. In order to show negligence in this regard it was necessary to show that the slabs could have been securely fastened to something, for, if they could not in the nature of things, be so securely fastened the defendant has omitted no duty to the plaintiff in that regard. The burden of this proof was on the plaintiff, in our opinion. It will not do to leave such an essential element in plaintiff's case to the pure guess, conjecture or speculation of a jury. Burke v. Hulett, 216 Ill. 545, 552; A. T. & S. Fe. Ry. Co. v. Alsdurf, 68 Ill. App. 149; Mogk v. Chicago City Ry. Co., 80 id. 411; Patton v. Tex. & Pac. Ry. Co., 179 U. S. 658, 663.

If, as the declaration avers, the defendant negligently failed and neglected to so fasten or secure the slabs that a certain ingot was dropped upon or close to the platform, and it became the plaintiff's duty to assist in raising the ingot and as a result thereof certain of the slabs composing the platform were caused to suddenly and violently jump, shift or move from their proper positions, and one of the slabs struck against and fell upon the plaintiff's right foot, we are unable to see that the negligence averred was the proximate cause of the injury. The injury was caused, according to the averments in the count, and the undisputed evi-

dence in the case, after the ingot had fallen, and the slab had been driven from its position by the concussion, and in the work of raising the ingot from its position to place it in the tilter had been commenced. The slab which struck and injured the plaintiff, according to the testimony, was displaced from its proper position by the fall of the ingot. The ingot was lying partly upon the north end of the slab and partly upon the walk or floor of the mill. The fact that the slab was left unfastened up to this point in the occurrence had occasioned the plaintiff no injury. The plaintiff was in charge of raising the ingot from the position where it had fallen, and directed Grunhard to get the fishing tongs to assist in lifting the ingot. The evidence shows that the crane was so far to the east of the ingot that the long fishing tongs were necessary in order to reach it. He then directed the crane man, after the fishing tongs had been attached to the crane, to lift the ingot. He chose his own time in which to give the order; he chose his own position while giving the order, and placed himself so near the south end of the slab that, in the natural course of things, as the ingot would be lifted and pulled to the east, it would drag with it the north end of the slab, and in so doing would naturally cause the south end of the slab to swing around to the west where the plaintiff was standing. The plaintiff might have taken a position where any movement of the slab could not have reached him, but instead of choosing such a position, he negligently chose one within reach of the slab, and he must be held, under the undisputed facts in the case, to be guilty of contributory negligence which proximately and directly caused the injury which he received.

Where an employe has the power to adopt his own method of doing work, and he voluntarily selects of two ways the more dangerous, he does it at his peril, and cannot recover for an injury resulting from such selection. P. D. & E. Ry. Co. v. Puckett, 52 Ill. App.

222; P. C. Mining Co. v. Harvey, 78 *id.* 278; C. I. & L. Ry. Co. v. Barr, 204 Ill. 163; Ill. Steel Co. v. McNulty, 105 Ill App. 594.

For two reasons, therefore, the failure to prove the negligence of the defendant, and the contributory negligence of the plaintiff, there can be no recovery under the first count of the declaration.

As to the negligence charged in the second count, that the defendant failed to warn Knox of the fact that the slabs were unfastened, we are of the opinion that independently of what we have said with reference to the first count of the declaration, the evidence does not sustain the charge of negligence in the second count.

The plaintiff in his testimony stated that he did not know before the accident whether the slabs were fastened or not. He walked over the platform many times each day, and in looking down upon it, he says the platform appeared to be a solid part of the mill. The slabs in question, which weighed 2200 pounds each, when placed in their position formed what would appear to be a substantial platform. But here again the plaintiff was not injured by reason of any failure of the defendant to warn him that the slabs were unfastened, for he was injured, as the evidence shows, after the slab had been displaced by the fall of the ingot, and he knew where the slab in question was lying because the north end of it was under the ingot which he was attempting to hoist by means of the crane. It was unnecessary for the defendant to warn him as to where that slab was lying because it was before his eyes and he knew that it was out of position and loose. It would have made no difference in the situation as it existed just prior to the time when plaintiff was injured if he had been warned daily or any number of times prior thereto that the slabs were loose and unfastened. By the dropping of the ingot a new situation

Knox v. Illinois Steel Co., 167 Ill. App. 279.

was created.  The slab was partly off from its rest-
ing place, the north end being some eighteen inches
further to the west than where it usually rested, and
the south end was lying up against the south end of the
middle slab.  The slab was thus resting partly on the
steel foundation and partly off, and thus the ends of
the steel beams formed a fulcrum on which the slab
was resting.

We are not unmindful of the testimony of the plain-
tiff, that when he came to the place where the ingot was
lying, "the slabs were in their position at that time.
The falling on the slab did not loosen or affect the slab
at all," and that there was no displacement of any
part of the platform before the ingot was raised.  But
this statement of Knox is worthless and of no weight
whatever, for on cross-examination he says:

"I just got down there in time to see this ingot drop
from the crane.  It dropped out of the crane.  The
crane was about six feet from the tilter at the time
and it dropped down onto the slab platform.

Q.  Could you see what it did to the slab platform
when it dropped?  A.  I didn't see it do anything.

Q.  Did you look at the slab platform to see if it did
do anything?  A.  No.

Q.  Didn't pay any attention to the slab platform?
A.  No, sir.

Q.  You don't know whether the slabs were all close
together or whether they were apart?  A.  Well, if
they were all close—

Q.  Wait a minute; you did not look?  A.  No, sir.

Q.  Up to the time the accident happened, you did
not look at the slab platform at any time, did you?
A.  Up to the time the accident happened?

Q.  Yes, up to the time it caught you there?  A.  No,
sir.

Q.  At any time after this ingot had fallen, when
you came up there did you look at those slabs on the
table?  A.  Not before I moved the ingot.

Q.  Not before the ingot was moved?  A.  No, sir."

If the slabs were all in place after the ingot fell, as Knox testified on his direct examination, in raising the ingot the movement of the west slab which struck the plaintiff would have been impossible physically, for the evidence shows without question that the east slab of the platform, as stated above, rested against the irons which supported the walk.

When appellee took charge of lifting the ingot from the place where it fell, and in lifting the ingot so pulled the north end of the slab to the east, he knew that the south end of the slab would naturally be caused to swing to the west. If he had been warned of the fact that the slabs were loose before this situation was created it could not have changed his action or added to his knowledge in the least of the situation then existing. The ingot was lying on the north end of the slab and its situation was plainly observable by the plaintiff, so that the negligence averred in the second count of the declaration, if the defendant was negligent in that regard, had nothing whatever to do with the immediate cause of appellee's injury. The injury was caused by the lifting of the ingot under the orders of appellee from the place where it had fallen, and in lifting it dragging the north end of the slab to the east and causing the south end of the slab to swing to the west over the ends of the iron frame work.

The situation was fixed and certain at the time the plaintiff undertook to lift the ingot. The plaintiff was responsible for everything done which caused the movement of the slab. He gave all the directions and all the orders, and took a dangerous position with reference to the slab, which he must have seen was out of position and was resting upon the ends of the beams constituting the foundation upon which the slab ordinarily rested. There was no possible connection between the failure to warn, alleged in the declaration, and the situation as it existed when the plaintiff took charge of the work of lifting the ingot from the place

where it rested and placing it in the tilter.

In our opinion the evidence fails to show that the negligence averred in the second count of the declaration was the proximate cause which produced the injury complained of. It follows that no recovery can be had under the second count of the declaration.

As these conclusions are decisive of the action it is unnecessary to consider and decide the other questions argued.

The motions to direct a verdict as to each count should have been sustained by the court, and the jury should have been instructed to find for the defendant.

The judgment is reversed with a finding of fact.

*Reversed.*