John J. Convery, Appellee, v. John P. Ramsey et al., Receivers, Appellants.

1. MASTER AND SERVANT—*employee must prove exercise of due care.* In an action by a servant for a personal injury caused by the use of defective machinery or materials employed in the business, the observance of due care and caution on the part of the servant is indispensable to his right to recover.

2. MASTER AND SERVANT—*employee chosing dangerous method.* Where an employee is not directed to perform his work in a specific manner, but is given general orders to perform the task and is left to the use of his own discretion as to the manner in which the work shall be done, and there exists a safe way and a dangerous way, which are equally open to him, it is his duty to select the safe way, and if he fails so to do he cannot recover for an injury.

3. MASTER AND SERVANT—*when employee chooses dangerous route.* Where a switchman fails to mount his engine and though no emergency exists runs to overtake it, and does not take a route that he knows to be open, but takes a course in the dark that he knows leads to a working ground where it was customary for workmen to leave tools scattered, and is there injured in falling over a wheelbarrow, he is not in the exercise of reasonable care for his safety and cannot recover.

4. MASTER AND SERVANT—*when employee must anticipate danger.* Where an employee is injured on falling over an obstruction in a route that he knew was more dangerous than a route he could have taken, he cannot contend that as he had used the route before and it appeared to be safe he had no reason to anticipate the obstruction.

5. MASTER AND SERVANT—*when employee cannot avail of em-ployer's failure of duty.* Where an employee unnecessarily takes a dangerous route instead of taking a safe route and is injured in falling over an obstruction, he cannot contend that it was the duty of his employer to keep the route free from obstructions.

Appeal from the Circuit Court of Sangamon county; the HON. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the April term, 1912. Reversed with finding of fact. Opinion filed October 15, 1912.

WILSON, WARREN & CHILD, for appellants.

T. J. CONDON and ALBERT SALZENSTEIN, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This is an action on the case begun in the Circuit Court of Sangamon County by the appellee against appellants to recover damages for personal injuries. The declaration contains one count, to which a plea of not guilty was filed. The cause was heard by the court and jury, and a verdict in the sum of $1,960 was returned. Motion for new trial was overruled and judgment entered upon the verdict. To review this judgment this appeal was perfected.

The principal error complained of is that the evidence is not sufficient to sustain the verdict; that due care and caution for his own safety was not shown upon the part of the appellee.

In order to determine these questions it will be necessary to review the evidence preserved in the record.

The uncontroverted facts in this case show the surroundings of the place where appellee received his injury were as follows: A sand house stood at the north, and on the east of the sand house was what is called the "inbound track" of the railroad, which ran north and south from the sand house over an ash pit. On the west of the sand house was what is called the "outbound track," also running north and south,

these tracks being about twenty feet apart. A coal box stood south of the sand house, a distance of about seven feet, leaving an open space between them. At a point about fifteen feet south of the coal box, and almost midway between the two tracks, paralleling them, stood a tool rack about ten feet long, consisting of two posts set in the ground, with hangers thereon for the tools, leaving an open space between the tool rack and the coal box. About ten feet east of the tool rack was the ash pit, underneath the "inbound track," and it extends north and south for a distance of about twenty feet. This space between the tool rack and the ash pit is used by the employees of appellants in cleaning engines and for depositing the tools when not in use. The space between the tool rack and the west, or "outbound" track is open.

On the night of the injury to appellee, he was employed as a switchman in the yards of the appellants' road, at Springfield, and had been so employed for about two and one-half months. He had been engaged in railroad train service for more than ten years. On the night in question he had gone with the crew to the sand house for the purpose of joining the engine to continue his work, and it was there his duty to clear the running boards of the engine of ice and snow thereon, by applying hot sand to the same. The engine at that time was standing on the west track, west of the sand house, facing south. After clearing the running boards of the engine of the ice, the appellee and his fellow switchman returned the tools used to the sand house and went inside, and while standing there the bell of the engine was sounded and appellee ran out of the sand house at a door at the southeast corner thereof and ran due south to the point where he received his injury.

The location of this latter point is material to the consideration of this case. We find it very difficult to determine from appellee's evidence in chief at what exact point he claimed to have received the injury, for

the reason appellee's counsel, upon the trial of this cause, seem to have used a plat which appellee had made, and directed appellee's attention to it, and the answers as to where the injury occurred referred to, "A," "B" and "C," presumably marked upon the plat, and such expressions as "there," "here," "over-there," etc. This plat, for some reason, does not appear in the record. But, upon cross-examination appellee locates the point where the injury occurred upon a plat introduced by appellants, by a cross-mark made by him, at a point due south of the door of the sand house, a little north of the south end of the ash pit, and between it and the tool rack. At the time of the injury to appellee, an engine was over the ash pit and the cleaner was at work on it.

The appellee testified that he was running to overtake and board his engine and ran into the tools used to clean the fire box of the engines which had been laid with one end up on a wheelbarrow and the other end on the ground, crossways of the space between the ash pit and the tool rack, and that he did not see them because it was dark and the smoke and the steam at this point shut off the light from an arc lamp near there, if it was burning, and that he turned the wheelbarrow over and scattered the tools as he fell.

The place where appellee marked on appellant's plat as being the point where he was injured appears to be about forty-five or fifty feet south from the door of the sand house.

Joseph Smith, a witness called on behalf of appellee, was at the time of the accident, at work cleaning the engine which was standing over the ash pit, and he gave the alarm. After a careful examination of the evidence of this witness as it appears in the abstract and also in the record, we are unable to determine as to where he really intended to locate the point where the injury to appellee occurred. In his

examination in chief he does not attempt to locate where the wheelbarrow was, over which it is alleged appellee fell. In his redirect examination he located the wheelbarrow as being about ten feet from the sand house and fifteen or sixteen feet north of the south end of the ash pit. On cross-examination he was asked to make a mark on appellant's plat with the letter "O" at the point where the wheelbarrow stood at the time. The witness marked the letter "O" over near the "outbound" track, north and west of the tool rack and a little east and from seven to ten feet south of the southwest corner of the coal box. Again the witness was asked to mark on the plat the point at which the wheelbarrow was standing at the time of the injury with the figures "xx." The "xx" as placed by the witness on the plat appears near the "inbound" track and about opposite the north end and east of the tool rack, near the north end of the ash pit.

This was all of the evidence upon this point offered by the appellee.

The appellants introduced John Higgins, who testified, in substance, that he was in the sand house when the appellee and the other switchmen working with him came in, got sand and thawed the ice off of the running board of their engine, and that appellee was standing in the sand house when the bell of the engine sounded; that appellee then ran out of a door at the southeast corner of the sand house and that he did not see appellee again until he was informed of the injury; that he then went out and found appellee lying on his side with his feet straight out, about four feet south of the southeast corner of the coal box and that the wheelbarrow was between the appellee and the coal box, and that it was standing upright. He said he asked appellee what was the matter and that appellee replied that his leg was broken and that he did not know how it happened; that he put appellee in the wheelbarrow and took him to the coach;

that the wheelbarrow was about ten feet from the sand house.

This is all of the evidence upon the question of where appellee received his injury.

The determination of the question as to where the appellee received his injury is of importance in determining whether the appellee was in the exercise of due care and caution for his own safety at the time he received the injury complained of.

There can be no dispute as to the law. It was necessary, in order for the appellee to recover a judgment, for him to prove upon the trial of the cause that at the time of the accident he was in the discharge of his duty to appellants as a switchman, and that he was, at the time, in the exercise of ordinary care and caution for his own safety. Chicago, I. & L. Ry. Co. v. Barr, 204 Ill. 163; Jorgenson v. Johnson Chair Co., 169 Ill. 429.

The rule, as announced by the supreme court, is thus stated: In an action by a servant, against his employer, to recover damages for a personal injury caused by the use of defective machinery or materials employed in the business, the observance of due care and caution on the part of the servant is indispensable to his right to recover. Pennsylvania Co. v. Lynch, 90 Ill. 333.

Another well-settled rule is, that where the employee is not directed to perform his work in a specific manner, but is given general orders to perform the task, and is, himself, left to the use of his own discretion as to the manner in which the work shall be done, and there exists a safe way and a dangerous way, which are equally open to him, it is his duty to select the safe way, and if he fails so to do, he cannot recover for an injury. Illinois Cent. R. Co. v. Swift, 213 Ill. 307.

The present duty appellee had to perform was to mount his engine when it was ready, and assist in switching cars. The engine was standing at the sand

house. He could have stepped on, but failing to do so, went inside the sand house, and was there a very few minutes when the bell sounded. If he desired to join his engine there were two routes open to him. One was by a course between the coal box and the sand house, which he knew to be open, and the other was the course he alleged he did take, which he knew led to the working ground of the engine cleaners and ash pit men, and he also knew that they were then at work cleaning an engine and fire box with long heavy iron tools which it was the custom of the workmen to leave scattered on the ground between the ash pit and the tool rack. With this knowledge on his part, can it reasonably be said that while heedlessly running, in the dark, down through this dangerous place, he was in the exercise of reasonable care for his own safety?

It is contended, however, that appellee had been through this route and it appeared to him to be safe, and that, therefore, he had no reason to anticipate an accident.

To say the most that can be said in his favor on this question he knew there was more danger attending that route in the dark than by the route between the sand house and the coal box.

Mr. Thompson, in his work on Negligence, vol. 5, sec. 5372, lays down the following rule:

"Generally speaking, where an employee has a duty to perform, and there are two ways or methods of performing it or of reaching the place of performing it, one of which is dangerous and the other safe, or one of which is more dangerous than the other, and the employee knowingly and voluntarily, or through negligent ignorance, and without there being any emergency, selects the dangerous one or the more dangerous one, in consequence of which selection he brings upon himself an injury which probably would not have befallen him if he had selected the other one, he cannot make his own negligence in making the choice, the ground of recovering damages against his employer,

but contributory negligence will be imputed to him as matter of law.''

It is not contended there was any emergency in this case making it necessary for appellee to mount his engine before it got out of reach, or that any emergency arose which kept him from mounting his engine before it started. The duty to be performed by aim was within the limits of a small switch yard, and his engine could have been reached within a short distance without unnecessary risk. Unreasonable risk has been defined to be such a risk as a reasonable and prudent man would not take. Can it be said reason and good judgment would dictate that without any emergency existing, the course leading along a route strewn with tools and implements, at a high rate of speed, on a dark night, should be taken when there was an absolutely safe route of reaching the point desired by traveling the same distance?

It is further insisted by the appellee that it was the duty of appellants to keep its yards and grounds free from obstructions, and provide a safe place for appellee to work.

If it had been necessary for appellee to have passed over the route leading through the cleaning grounds, this question might be of consequence. It was not, however, necessary, at the time in question, for the appellee to pass on the east side of the tool rack in going to or coming from his work, or while at work.

So far, in considering this case, we have proceeded on the theory that the appellee's version of the accident is correct. There is, however, reason for doubt on that subject, when we consider the evidence as a whole. It will be remembered that Mr. Higgins, who was in the sand house at the time of the injury, and was either the first or second person to reach appellee after the injury, fixed the place of the injury at a point four feet south of the southeast corner of the coal box, and the point where the wheelbarrow stood, as between the appellee and the coal box.

The point fixed by Mr. Higgins as where the injury occurred was from thirty to thirty-five feet north of the point fixed by appellee.

As we have heretofore indicated, the evidence of Mr. Smith was unintelligible as it appears in the record, and its reliability not worthy of consideration.

As we have seen, the point fixed by appellee as where he received his injury, was known to be dangerous, and in traveling that route he was not in the exercise of due care and caution for his own safety. The point fixed by Mr. Higgins would seem to be less dangerous, but whether entirely free from danger or not, cannot be determined from this record, as there is no evidence disclosing the surroundings at this point. It is fair to the appellee to accept his theory of the case, and in doing so we are constrained to hold that he was not in the exercise of due care and caution for his own safety at the time of receiving the injury complained of.

Finding it necessary to reverse the judgment for the reasons above given, we have not considered the various other errors complained of in this record.

The judgment is reversed.

*Reversed.*

Finding of fact. We find that the defendant company was not guilty of any negligence.