Hillsborough,  
April 7, 1936.

EMMA VAILLANCOURT *v.* MANCHESTER GAS CO.

NAPOLEON VAILLANCOURT *v.* SAME.

NAPOLEON VAILLANCOURT, *Adm'r. v.* SAME.

*Chretien & Craig (Mr. Chretien* orally), for the plaintiffs.

*Warren, Wilson, McLaughlin & Bingham (Mr. J. Walker Wiggin* orally), for the defendant.

PAGE, J.    The defendant maintained a cast iron gas main in Boutwell street, Manchester.    This pipe was laid in 1907.    The plaintiffs lived in a house on that street.    In December, 1932, they and Napoleon Vaillancourt's intestate were poisoned by gas, which collected in the cellar.    The ground outside was frozen.    There was no evidence of contributory negligence.

There was evidence warranting the finding of the following further facts: The gas that poisoned the plaintiffs came from a break in the defendant's main in front of the house where they lived. This break was caused by the settling of the soil just beneath the length of pipe that cracked.

The plaintiffs claimed that the settling was due to the character of the ground in which the main was laid. It could be found that the ground was "made land," consisting of refuse matter and soft material of several varieties, which had a tendency to settle. One of the defendant's witnesses testified that the main was laid on hard natural soil of clay and sand. The defendant's foreman asserted that when the pipe was repaired after the plaintiffs' injuries, he found the soil underneath hard but sunken. Upon being pressed, however, he said that it was very soft below as well as above the pipe.

The jury were entitled to conclude, therefore, that the main was laid in soft "made land," and might also conclude that the defendant should, in the exercise of reasonable prudence, have anticipated that the soil below the pipe would sink and cause a break in the pipe. It could further be found that the soil in the street had shown signs of subsidence and insecurity; for it had developed depressions or holes, the surface had fallen so that water stood below the level of the drainage outlets, and the curb-stones had caved in. This conclusion would warrant the inference that the defendant ought to have anticipated the settling of the soil under the main.

The defendant claims that the settling of the pipe was due to the laying by the city of a sewer in 1910 or 1911. This sewer was below the level of the gas main, and the sewer connection from the house occupied by the plaintiffs passed transversely under the gas main and several feet below it. There was no evidence, unless that taken at the view, that this sewer connection passed under the point where the gas main broke. But even if it were proper for the jury to find that the subsidence causing the gas leak was due to the construction of the sewer connection, they could still inquire whether men of average prudence, situated as the defendant was, ought to have known of what was done by the city, ought to have anticipated that the gas main might thereby be caused to leak, and ought to have taken some precautions. *Greaney* v. *Company*, 174 Mass. 438, 440; *Koelsch* v. *Company*, 152 Pa. St. 355, 363, 364. In any event, whether the leak was caused by some failure of duty on the part of the defendant, or by some independent agency without the defendant's fault, was a question of fact for the jury. *Salem* v. *Company*, 241 Mass. 438, 442.

There is some doubt whether the record leaves the plaintiffs in a position to assert that the jury could find that the free gas entered the cellar of the house because the defendant failed to seal the hole in the cellar wall through which the service pipe entered. But at least it could be found, upon the testimony of the defendant's foreman, that the freezing of the surface of the ground outside caused the gas escaping from the break in the main to percolate through the soil, under the cellar wall, and thence to rise through the unfrozen soil of the cellar. Such a consequence of the leak could be found to be expectable under the circumstances.

The case of *Thompson* v. *Company*, 201 Mass. 77 is nearly upon all fours with the facts now under consideration. The gas main was set at precisely the same depth, in "made land." The ground was frozen and the gas percolated into a cellar. The main was cracked all the way around, as was the case here. The cause of the crack, however, was not the settling of the pipe, but contraction because of cold. The court sustained the denial of a motion for a directed verdict on the ground that it was for the jury to say whether (1) the breaking of the pipe was due to causes beyond the defendant's control or which could not be anticipated by it, or (2) it was due to negligence in not anticipating the cold and putting the pipe below frost. Compare *Rockford Gas Light Co.* v. *Ernst*, 68 Ill. App. 300.

The mere fact that the escape of gas is hazardous cannot subject the defendant to liability; there can be no liability without negligence. *Brown* v. *Collins*, 53 N. H. 442. But the defendant's duty to anticipate injury and take protective action is measured in part by the seriousness of the danger. *Kenney* v. *Len*, 81 N. H. 427, 429. The dangers attendant upon escaped gas are among the circumstances in view of which the defendant acts, and its care must be reasonably proportioned to those dangers. *Greaney* v. *Company*, *supra*. This is the practically unanimous view. 25 A. L. R. 262.

The defendant cannot avoid liability by showing that it did not in fact know that the pipe was broken or that gas was escaping into the cellar of the house occupied by the plaintiffs. Its duty was to guard against such a happening by exercising such care as average men would have exercised when acting under similar circumstances. *Dow* v. *Company*, 69 N. H. 312, 315. One of the factors to be considered was the reasonable chance that a subsidence of the soil would cause a break in the main.

It is the general rule that those who maintain gas pipes must adopt such a system of inspection as men of average prudence would em-

98

ploy in the detection of leaks due to causes within the anticipation of men of ordinary skill in the business. *Salem* v. *Company, supra; Koelsch* v. *Company, supra;* 25 A. L. R. 267. This does not appear to be a case where that precise rule may be applied, for the question is not whether this leak should have been discovered, but whether it should have been anticipated. However, the jury might have drawn a proper conclusion from the findable fact that the defendant had no inspection system whatever. It would be reasonable to find that proper inspection would have revealed the continuing unsettled state of the soil in which the gas main reposed, as well as the fact that a sewer connection had been laid under the main. Whether or not due care would have led the defendant then to anticipate the breaking of the pipe and the escape of the gas were fair questions for the jury. If cause for such anticipation were found, the defendant could be charged with negligence in maintaining the pipe thus located for a period of twenty or twenty-five years and doing nothing to avoid or lessen the chances of an escape of gas.

*Judgments on the verdicts.*

All concurred.