473 P.2d 937

Elwyn SMITH and Morrie Smith, Randy Smith and Kelly Smith, Minors, through their Guardian ad litem, Kathleen Prentice, Plaintiffs,

v.

The STATE of Idaho, Defendant.

Elwyn SMITH and Morrie Smith, Randy Smith and Kelly Smith, Minors, through their Guardian ad litem, Kathleen Prentice, Plaintiffs-Appellants,

v.

DUFFY REED CONSTRUCTION CO., an Idaho Corporation, John Doe, Jack Doe, and Jane Doe, Defendants,

and

The State of Idaho, Defendant-Respondent.

James W. HOPPER, surviving husband of Stella M. Hopper, Deceased, individually, and as Guardian of the Estates of Rachel Jane Hopper and Rebecca Estelle Hopper, the surviving minor children of Stella M. Hopper, Deceased, Plaintiffs-Appellants,

v.

The IDAHO BOARD OF HIGHWAY DIRECTORS and Doyle Symms, C. Ed Flandro and Ernest F. Gaffney, the members of the Idaho Board of Highway Directors, Defendant-Respondent.

Maurice MURPHY and Zelda Murphy, husband and wife, and Maurice Murphy as Guardian ad litem for Thomas Murphy, a minor, Plaintiffs-Appellants,

v.

The DEPARTMENT OF HIGHWAYS, a civil department of the State of Idaho, Doyle Symms, Ernest F. Gaffney and C. Ed Flandro as the Board of Directors for the Department of Highways, Blaine Sessions, Doyle Symms, Ernest F. Gaffney and C. Ed Flandro, Individually, Defendants-Respondents,

and

Melrose Burgess and Jane Doe Burgess, husband and wife, Defendants.

Nos. 10285, 10290, 10315 and 10388.

Supreme Court of Idaho.

Aug. 5, 1970.

Rehearing Denied Aug. 5, 1970.

Kramer, Plankey & Meehl, Twin Falls, for plaintiffs and appellants in Nos. 10285 and 10290.

McClenahan & Greenfield, Boise, for plaintiffs and appellants in No. 10315.

Rayborn, Rayborn, Webb & Pike, Twin Falls, for plaintiffs and appellants in No. 10388.

Faber F. Tway, Boise, for defendants and respondents.

The previous opinion regarding these cases is withdrawn and this opinion is hereby substituted therefor.

DONALDSON, Justice.

These cases involve claims for wrongful death and personal injury against the State of Idaho, based on alleged negligent acts of employees of the State Highway Department. In all of the cases, except Case No. 10285, the state moved for summary judgment or dismissal in the district court on the basis of the state's sovereign immunity. In each case the motions were granted by the district court and the plaintiffs have appealed. Case No. 10285 involved the same parties and facts as Case No. 10290 and was originally filed in the Idaho Supreme Court. In Case No. 10285 the state filed a motion to dismiss and that original action is still pending in the Supreme Court. Cases 10285, 10290, and 10315 were consolidated by Order of this Court, January 3, 1969. Case No. 10388 was consolidated by Order of this Court

on June 20, 1969. The facts of each case are as follows:

Smith, et al. v. State of Idaho—Nos. 10285, 10290.

In regard to this claim, two causes of action were initiated: No. 10290, originally commenced in the District Court of the Fifth Judicial District, Twin Falls County, Honorable Theron W. Ward, District Judge, and No. 10285, an original action filed before the Supreme Court pursuant to Article 5, § 10 of the Idaho Constitution.[1]

These suits arose out of an accident occurring at 6:20 A.M., April 5, 1967, on State Highway 30 approximately ¾ of a mile north of Hagerman, Idaho. Elwyn Smith's automobile skidded off the road, then rolled and turned over, resulting in the death of Shirley Jean Smith, his wife, and causing injuries to his three minor daughters, all passengers in the automobile.

Plaintiffs claim that the portion of the highway where their vehicle skidded was of relatively new construction and that the Duffy Reed Construction Company which constructed the highway used a certain composition which rendered the highway dangerous and unusually slippery when wet. Plaintiffs further allege that the construction company did not construct the roadway where the accident occurred in accordance with good engineering practices, since there was a bend or turn at that point tending to throw cars traveling in a southerly direction off the highway and on to the shoulder of the highway. Plaintiffs allege that since the construction company was operating pursuant to contract specifications and directions of the State of Idaho, the state was negligent for the same reasons as the construction company. In addition the state was negligent in failing to erect warning signs along said road warning motorists traveling thereon of the dangerous conditions then existing.

Murphy, et al. v. Department of Highways—No. 10388.

Appeal from the District Court of the Fifth Judicial District, Twin Falls, County. Honorable Theron W. Ward, District Judge.

This is a negligence action to recover for the personal injuries suffered by a minor who was a passenger in an auto which skidded into a bridge on State Highway 25 one-half mile west of Paul, Idaho. The accident occurred at about 8:00 A.M., on December 22, 1965.

The complaint alleges that the Idaho Department of Highways maintained a bridge "on State Highway 25 which created an unusual hazard in that the bridge spanned sewer water which because of its warm temperature, caused ice to collect and build up on the pavement immediately surrounding the bridge." Plaintiffs allege the defendant's negligence or gross negligence was their failure to remedy or to correct the dangerous condition and their failure to post adequate warnings of the icy condition of the bridge.

The minor's parents (appellants herein) are suing in their own right for medical expenses incurred for the treatment of their son, Thomas Murphy, and as guardians ad litem seek general damages for the pain, suffering, and injuries sustained by him. Appellants do not argue on appeal that they are entitled to sue in their own right and acknowledge that their right is barred by the statute of limitations, I.C. §§ 5-201, 5-219.

Hopper v. State of Idaho—No. 10315.

Appeal from the District Court of the Fourth Judicial District, Ada County. Honorable J. Ray Durtschi, District Judge.

---

1. Art. 5, § 10, Idaho Constitution. "Jurisdiction over claims against the state.—The Supreme Court shall have *original jurisdiction to hear claims against* the state, but its decision shall be merely recommendatory; nor process in the nature of execution shall issue thereon; they shall be reported to the next session of the legislature for its action."

This negligence action arose from an accident occurring on U. S. Highway 20–26 between Gooding and Bliss, Idaho, July 20, 1965.

The decedent, wife of James W. Hopper, appellant, and her minor children were proceeding in a westerly direction in an automobile on U. S. Highway 20–26. The auto was struck by a bus then being operated in an easterly direction on the wrong side of the highway. As a result of the collision, the wife of the appellant died and the minor children sustained injuries.

On the day of the accident the Idaho Department of Highways was applying a "sealer coat" to the road surface of the eastbound lane of a six mile portion of U. S. 20–26 between Gooding and Bliss. The complaint alleges that flagmen had been stationed at each end of the project to warn motorists that both east and westbound traffic was being channelled into the westbound lane of the highway. During the afternoon of July 20, 1967, the flagman stationed at the easterly point of this project left his post. Upon his departure there was no flagman, nor any signal device, nor sign at this point to warn the deceased that the eastbound traffic was also proceeding in the westbound lane.

Appellants allege in their complaint that the defendants were negligent in the construction, supervision and maintenance of that portion of the highway under repair by failing to construct and erect warning signals or signs. The appellants also allege that the defendants were negligent in failing to have the flagman, at the easterly end of the project, remain on duty to warn westbound traffic of approaching traffic from the west.

Each of the three cases now before this Court presents an identical question; viz., whether or not the doctrine of sovereign immunity with regard to the tort liability of the State of Idaho is to be abolished.

"An immunity * * * avoids liability in tort under all circumstances * * * it is conferred, not because of the particular facts, but because of the *status or position of the favored defendant; and it does not deny the tort, but the resulting liability*." W. L. Prosser, Law of Torts, 996 (3d ed. 1964). (Emphasis supplied).

The doctrine of sovereign immunity has its roots in the ancient common law which theorized that the king can do no wrong.[2] But it was acknowledged that the king as the fountain of justice and equity, could not refuse to redress wrongs when petitioned to do so by his subjects.[3]

It was well recognized in the thirteenth century and later that while the king was not directly subject to the law, and that though ordinary writs did not lie against him in his court, he was morally bound to do the same justice to his subjects as they could be compelled to do to one another. In fact the Court of Exchequer had jurisdiction of equitable claims against the king.[4] Concerning the history and effect of the doctrine of sovereign immunity, the California Supreme Court speaking through Chief Justice Traynor in the case of Muskopf v. Corning Hospital District, 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457 (1961), had this to say:

"* * * At the earliest common law the doctrine of 'sovereign immunity' did not produce the harsh results it does today. It was a rule that allowed substantial relief. It began as the personal prerogative of the king, gained impetus from sixteenth century metaphysical concepts, may have been based on the misreading of an ancient maxim, and only rarely had the effect of completely denying compensation. How it became in

2. Blackstone, Commentaries on the Law, Gavit's Ed. p. 111, (1941).

3. 9 Holdsworth, A History of English Law, 3d Ed. (1966) p. 8.

4. Per Atkyns, B., Pawlett v. The Attorney General (1668), 145 Eng.Rep. 550, 552 (Ex.1668); Dyson v. Attorney General (1911), 1 K.B. 410 at 415.

the United States the basis for a rule that federal and state governments did *not have to answer for their torts* has been called 'one of the mysteries of legal evolution.' * * *." 55 Cal.2d 211 at 214, 11 Cal.Rptr. 89 at 90–91, 359 P.2d 457 at 458, 459 (1961).

Nevertheless the rule in the majority of the states of the United States has been one of absolute sovereign immunity with regard to torts committed by the state. The early case of Mower v. Inhabitants of Leicester, 9 Mass. 247 (1812), set precedent which has been followed by most state courts in the United States. As sometimes is the case, a court will enunciate a principle of law, citing authorities and reasons supporting its decision, only to find that in time the case is widely cited for a proposition of law unrelated to the original question presented by the case. The Supreme Judicial Court of Massachusetts in Mower v. Inhabitants of Leicester, *supra,* relied on the reasoning of an earlier English case, Russel v. The Men of Devon, 100 Eng.Rep. 359 (K.B.1788), in which the court held that an unincorporated governmental unit was not liable for injuries resulting from a defective bridge since it was better that an individual should sustain an injury than the public should suffer the inconvenience of collecting monies and then paying them to the injured party. It is evident there was no basis in law or fact for the Massachusett's court in Mower v. Inhabitants of Leicester, *supra,* to apply the rule of Russel v. The Men of Devon, *supra,* since the town of Leicester was incorporated and could have satisfied a judgment. Yet in spite of these distinguishing features the rule became firmly entrenched not only in Massachusetts but also in the majority of American jurisdictions.

■ Because the *notion* expressed by the adage, "The King can do no wrong," offends our sense of justice, and because the doctrine of sovereign immunity runs directly contrary to the basic concept underlying the entire field of tort law that liability follows negligence and that individuals and corporations are responsible for the negligent acts of their agents and employees acting in the course of their employment, this Court shall evaluate the doctrine of sovereign immunity in light of reason, logic, and the actions, functions and duties of our state in this the twentieth century. The following statement made by Justice Cardozo in 1921 is even more pertinent in 1970:

> "If judges have wofully misinterpreted the *mores* of their day, or if the *mores* of their day are no longer those of ours, they ought not to tie, in helpless submission, the hands of their successors." [5]

The rule of law, known as sovereign immunity, was adopted by the Idaho Supreme Court early in its statehood. Hollister v. State, 9 Idaho 8, 71 P. 541 (1903). The case best articulating the reasoning behind this Court's adoption of the rule of sovereign immunity is Davis v. State, 30 Idaho 137, 163 P. 373 (1917). The Court in that case quoted with approval the statement that the doctrine did not "rest upon the narrow ground that there are no means by which such obligations can be enforced, but on the larger ground that no obligations arise therefrom." Davis v. State, *supra,* at 143, 163 P. at 375. However as recently as 1967 this Court recognized,

> "That the State of Idaho and any of its subdivisions or departments, such as the Board of Highway Directors, are immune from liability for the torts of their employees unless such immunity has been waived to the extent of liability insurance obtained by the State or its subdivision, is a rule of long standing in Idaho. Davis v. State, 30 Idaho 137, 163 P. 373; State v. Parsons, 58 Idaho 787, 80 P.2d 20; Pigg v. Brockman, 79 Idaho 233, 314 P.2d 609; and Bare v. Department of Highways, 88 Idaho 467, 401 P.2d 552." Gates v. Pickett & Nelson Construction Company, 91 Idaho 836 at 840, 432 P.2d 780 at 784 (1967).

5. Cardozo, The Nature of the Judicial Process, p. 152, Yale Univ. Press, 1921.

In 1903 when this Court first followed the doctrine of sovereign immunity the automobile was just starting to gain popularity. The vast highway systems both intra and interstate had not then been constructed. Traffic signals, interchanges, divided highways and many other highway engineering marvels had not begun to appear on American roadways. Today however the influence of both state and federal government permeates every aspect of American life. Health, transportation, agriculture, communication, and education if not directly regulated by the government are at least supervised by it. Thus it is evident that there has been a tremendous increase in governmental functions and a resulting involvement between government and the individual citizen. Man has landed on the moon and yet this Court is asked to apply a proposition of law which is unjust, outmoded, and illogical not only when measured by current times, but also when viewed in the light of human affairs in 1903.

> "I think that when a rule, after it has been duly tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare, there should be less hesitation in frank avowal and full abandonment." [6]

 This Court in the proper performance of its judicial function is required to examine its prior precedents. When precedent is examined in the light of modern reality and it is evident that the reason for the precedent no longer exists, the abandonment of the precedent is not a destruction of stare decisis but rather a fulfillment of its proper function.

 Stare decisis is not a confining phenomenon but rather a principle of law.

And when the application of this principle will not result in justice, it is evident that the doctrine is not properly applicable.

In Bell v. Presbytery of Boise, 91 Idaho 374, 421 P.2d 745 (1966), the doctrine of charitable immunity was overruled by this Court without waiting for the legislature to change the law. We find the reasoning expressed in that case pertinent to the question presented by the case at bar,

> "Personal injury is no less painful, disabling, costly or damage-producing simply because negligent harm is inflicted by a charitable institution rather than a noncharitable one." Bell v. Presbytery of Boise, *supra*, at 376, 747, 421 P.2d at 747.

This Court then quoted with approval the following statement:

> " 'It has not been right, is not now right, nor could it ever be right for the law to forgive any person or any association of persons for wronging any other person.' " (Mullikin v. Jewish Hospital Ass'n of Louisville, 348 S.W.2d 930 at 932 [Ky.1961]); Bell v. Presbytery of Boise, *supra*, at 376, 747, 421 P.2d at 747.

These statements made in respect to negligent acts of charitable institutions apply with equal force and logic to the negligent acts of the state.

It is unquestionable that there is an established trend discrediting the doctrine of sovereign immunity. Numerous jurisdictions have waived tort immunity by the enactment of comprehensive statutory schemes.[7] Six jurisdictions have recently overturned the outmoded concept by judicial decision.[8] In the first session of the Fortieth Idaho Legislature, legislation dealing with the subject of sovereign immunity was seriously urged and was passed by

---

6. Cardozo, The Nature of the Judicial Process, p. 152, Yale University Press, 1921.

7. New York, Oklahoma, Oregon, Nevada.

8. Arizona, Stone v. Arizona Highway Commission, 93 Ariz. 384, 381 P.2d 107 (1963); California, Muskopf v. Corning Hospital District, *supra*; Illinois, Moli-tor v. Kaneland Community Unit Dist. No. 302, 18 Ill.2d 11, 163 N.E.2d 89 (1959); Indiana, Perkins v. State of Indiana, Ind., 251 N.E.2d 30 (1969); Kansas, Carroll v. Kittle, 203 Kan. 841, 457 P.2d 21 (1969); Nebraska, Johnson v. Municipal University of Omaha, 184 Neb. 512, 169 N.W.2d 286 (1969).

both houses.[9] The executive branch while vetoing the proposed statute recognized the need for affording relief to persons suffering injury because of the tortious acts of the state.[10] In the second session of the Fortieth Legislature, in 1970, a more comprehensive tort claims act (H.B. No. 591) was introduced early in the session in the House and passed by a large majority. However the Senate did not act on this legislation and it died in committee. This indicates the continuing awareness of the Legislature for the necessity of limiting or abolishing sovereign immunity in various areas including the field of torts.

This Court has already acted to limit the doctrine of sovereign immunity. In the case of Renninger v. State, 70 Idaho 170, 213 P.2d 911 (1950) the Court refused to follow the doctrine of sovereign immunity in cases involving the taking of private property by the state and where the owner seeks recovery by inverse condemnation. In the recent case of Grant Construction Co. v. Burns, 92 Idaho 408, 443 P.2d 1005 (1968) this Court abolished the doctrine of sovereign immunity in contract actions. In view of all these indications which unequivocally demonstrate that sovereign immunity is looked upon with disfavor by all three branches of our state government and the noticeable trend evidenced in other jurisdictions, we hereby hold that the doctrine of sovereign immunity is no longer a valid defense in actions based upon tortious acts of the state or any of its departments, political subdivisions, counties, or cities, where the governmental unit has acted in a proprietary as distinguished from a governmental capacity. Where the governmental unit acts in a proprietary capacity, the same rules of tort law which are applicable to private individuals will now apply to the governmental units. The construction and maintenance of highways is a proprietary function and has been held so by this Court: Eaton v. City of Weiser, 12 Idaho 544, 86 P. 541 (1906); Carson v. City of Genesee, 9 Idaho 244, 74 P. 862 (1903); Strickfaden v. Greencreek Highway District, 42 Idaho 738, 248 P. 456 (1926); Lively v. City of Blackfoot, 91 Idaho 80, 416 P.2d 27 (1966).

"It seems to us that incorporated cities and villages act not only in a legislative and governmental capacity, but also in a private or business capacity, and that the care and repair of streets and sidewalks cannot reasonably be said to be the exercise of legislative or governmental discretion, but is rather a ministerial or business duty they owe to the individuals it impliedly invite to travel over their thoroughfares. This view is sustained by the following authorities: Sutton v. City of Snohomish, (11 Wash. 24), 39 P. 273, 48 Am.St.Rep. 847; Dillon on Municipal Corporations, (4th Ed.) § 1023; Beach on Public Corporations, § 1209; City of Denver v. Dunsmore, 7 Colo. 328, 3 P. 705; Stevens v. City of Muskegon, (111 Mich. 72), 69 N.W. 229, 36 L.R.A. 777." Carson v. City of Genesee, 9 Idaho 244 at 255, 74 P. 862 at 865 (1903).

Futhermore other jurisdictions have held in accord with the Idaho rule.

"We have said on a number of occasions that the construction of highways is a proprietary and not a governmental function." Montgomery v. State Industrial Commission, 190 Okl. 439 at 441, 124 P.2d 726 at 729 (1942). See also Board of County Commissioners of Garfield County et al. v. Sims et al., 166 Okl. 298, 27 P.2d 633 (1933).

" * * * the maintenance of streets and sidewalks is classed as a ministerial or

9. House Bill 198, Fortieth Idaho Legislature, 1969.

10. "I believe that the state and its political subdivisions should be responsible citizens; responsible in the sense that lawful claims for injury to persons or property should receive realistic compensation from these entities of government. If the state is to expect good citizenship, it should be a good citizen * * *." Governor's Message to the Speaker of the House, April 4, 1969 re: Veto of House Bill 198.

proprietary function. Sandlin v. [City of] Wilmington, 185 N.C. 257, 116 S.E. 733, and cases cited; Graham v. [City of] Charlotte, 186 N.C. 649, 120 S.E. 466; Willis v. [City of] New Bern, 191 N.C. 507, 132 S.E. 286; Michaux v. [City of] Rocky Mount, 193 N.C. 550, 137 S.E. 663; Hamilton v. [City of] Rocky Mount, [199 N.C. 504, 154 S.E. 844] supra; Speas v. [City of] Greensboro, 204 N.C. 239, 167 S.E. 807." Millar v. Town of Wilson, 222 N.C. 340 at 342, 23 S.E.2d 42 at 44 (1942).

We are not however imposing liability for all torts committed by the state. As the Nebraska Supreme Court said in Brown v. City of Omaha, 183 Neb. 430, 160 N.W.2d 805 (1968):

"Any modification ultimately shaped by this court should be limited to torts and should not be construed as imposing liability on any governmental body in the exercise of what might be termed 'ministerial or discretionary functions' nor on the exercise of legislative or judicial or quasi-legislative or quasi-judicial functions. See Holytz v. City of Milwaukee, [17 Wis.2d 26, 115 N.W.2d 618] supra." 183 Neb. 430 at 434, 160 N.W.2d 805 at 808 (1968). See also Johnson v. Municipal University of Omaha, 184 Neb. 512, 169 N.W.2d 286 (1969).

We also recognize the broad coexistent authority of the legislature to act in this field and, therefore, by this holding we do not enlarge the state's liability for negligent acts when the state has obtained insurance coverage pursuant to Chapter 35, Title 41 of the Idaho Code. In such a case, the action is governed by I.C. § 41-3505 and any recovery will be limited to the extent of a reasonable coverage of insurance. Where the legislature has acted in a limited area we recognize the limitation imposed by the legislature. However the Idaho Legislature has not preempted the field. As Justice Traynor said in the case of Muskopf v. Corning Hospital District, *supra*:

"We are not here faced with a situation in which the Legislature has adopted an established judicial interpretation by repeated re-enactment of a statute. * * Nor are we faced with a comprehensive legislative enactment designed to cover a field. What is before us is a series of sporadic statutes, each operating on a separate area of governmental immunity where its evil was felt most. Defendant would have us say that because the Legislature has removed governmental immunity in these areas we are powerless to remove it in others. We read the statutes as meaning only what they say: that in the areas indicated there shall be no governmental immunity. They leave to the court whether it should adhere to its own rule of immunity in other areas." 55 Cal.2d 211 at 218, 11 Cal. Rptr. 89 at 93, 359 P.2d 457 at 461 (1961). Furthermore the rule of sovereign immunity is of judicial or common law origin and this Court has the power to modify it so long as the legislature has not acted. I.C. § 73–116; State v. Iverson, 79 Idaho 25, 310 P.2d 803 (1957); State v. White, 93 Idaho 153, 456 P.2d 797 (1969). We agree with the Nebraska Supreme Court when it said:

"Both the Legislature and this court have power to act to change the doctrine and it may well be that the Legislature will have the ultimate word. This would seem to be a poor reason to avoid the court's obligation to modify the common law to serve the requirements of justice in a modern society. We ought not to thrust upon the Legislature the sole responsibility for injustice on the ground that, 'Thus it was said in the reign of Henry IV,' nor even on the ground that any change would constitute the traditionally condemned heresy of judicial legislation." Brown v. City of Omaha, 183 Neb. 430 at 434, 160 N.W.2d 805 at 808 (1968).

In analyzing the three separate cases which are involved in this opinion,

it appears that each cause of action is primarily based upon an alleged dangerous condition created by and through the negligent acts of the State Highway Department. In considering the standard of care required of the State Highway Department it is our opinion that the standard should be similar to that owed by a private individual who is the owner or possessor of land to an invitee. We therefore hold that the State Highway Department is subject to liability for harm caused to persons lawfully using the highways for the purposes intended when the State Highway Department creates or maintains a dangerous condition on the highway if the State Highway Department:

(1) knows of or by the exercise of reasonable care would discover such condition, and

(2) should realize that the condition involves an unreasonable risk of harm to those using the highways, and

(3) should expect that persons using the highway will not discover or realize the danger, and

(4) fails to exercise reasonable care to make the condition safe or to adequately warn of the condition and the risk involved, and,

(5) the persons using the highway do not know or have reason to know of the condition and attendant risks. Cf., 2 Restatement, Torts, § 342, § 343, § 343A. It is also noted that highway districts and municipalities have been held liable for dangerous conditions of roads and thoroughfares for many years in Idaho. In the case of Carson v. City of Genesee, *supra*, this Court held that municipalities owe to the public a duty to keep their streets and thoroughfares in a reasonably safe condition for use by travelers in the usual modes. This Court later applied the same standard of care to highway districts in the case of Strickfaden v. Greencreek Highway District, *supra*, and further expanded this duty as follows: "That municipalities are

liable for negligent construction or maintenance of their streets." 42 Idaho 738 at 755, 248 P. 456 at 460 (1926). We realize the State Highway Department performs many functions and duties in connection with the efficient and expeditious administration of our state highway system. Therefore to impose a strict standard of care upon the Department of Highways for their tortious acts would in our opinion be unfair.

The standard of care required of the Department of Highways is reasonable and proper in view of the extensive duties and powers granted to the Board of Highway Directors.[11] The relevant duties and powers of the Idaho Board of Highway Directors are prescribed by I.C. § 40-120 and are as follows:

"40-120. Duties and powers of the board.—The Idaho board of highway directors, subject to the right of protest hereinafter provided for, shall be vested with the functions, powers and duties relating to the administration of this act and shall have power to:

\* \* \* \* \* \*

(3) Abandon the maintenance of any highway and remove it from the state highway system, when such action is determined by the unanimous consent of the board, to be in the public interest.

(4) Locate, design, construct, reconstruct, alter, extend, repair and maintain state highways when determined by the board to be in the public interest.

(5) Establish standards for the location, design, construction, reconstruction, alteration, extension, repair and maintenance of state highways, provided that standards of state highways through villages and cities shall be coordinated with the standards in use for the street systems of the respective villages or cities.

\* \* \* \* \* \*

(7) Approve and determine the final plans, specifications and estimates for

---

11. I.C. § 40-112, I.C. § 40-120.

state highways and cause contracts for state highway work to be let by contract in the manner provided by law.

\* \* \* \* \* \*

(12) Expend funds appropriated for the construction, maintenance and improvement of the state highways.

(13) Prescribe rules and regulations affecting state highways, and to enforce compliance with such rules and regulations.

\* \* \* \* \* \*

(17) Furnish, erect and maintain, whenever necessary for public safety and convenience, suitable signs, markers, signals and other devices to control, guide and warn pedestrians and vehicular traffic entering or traveling upon the state highway system.

(18) Forbid, restrict or limit the erection of unauthorized signs, billboards or structures on the right-of-way of any state highway, and remove therefrom and destroy any unauthorized signs now or hereafter existing thereon.

(19) Close or restrict the use of any state highway whenever such closing or restricting of use is deemed by the board to be necessary for the protection of the public or for the protection of the highway or any section thereof from damage."

The state also urges that even if the rule of sovereign immunity is archaic, illogical and unjust in its effect that the "rule" has existed so long that only the legislature has the power to change it. The Arkansas Supreme Court answered this argument quite succinctly in Parish v. Pitts, 244 Ark. 1239, 429 S.W.2d 45 (1968):

" \* \* \* Although the field of the common law is not primarily the Legislature's problem, it is the primary concern of this Court. Accordingly, the Court, not the Legislature, should extirpate those rules of decision which are admittedly unjust, for it is to the judiciary that the power of government is given to provide protection against individual hurt. Green, Freedom of Litigation, 38 Ill.L.Rev. 355, 382 (1944).

"Considerations of public policy are not and never have been for determination by the Legislature alone. Holmes, The Common Law, 35 (1881). Especially is this so when the individual's rights are put in question by governmental activity as here. We are now of the opinion that re-examination of the principle of governmental immunity from tort action is the duty of this Court and should be undertaken at this time." 244 Ark. 1239 at 1242, 1243, 429 S.W.2d at 47 (1968).

The "rule of sovereign immunity" has not existed in Idaho in as wide a scope and with the force that its repetition would imply. From its inception there has been constant judicial restriction of the rule. As previously pointed out, first municipalities and villages were held liable for negligent acts performed in the course of their proprietary functions. Carson v. City of Genesee, *supra*; Moreton v. Village of St. Anthony, 9 Idaho 532, 75 P. 262 (1904); Eaton v. City of Weiser, *supra*. This was further expanded to include highway districts, Strickfaden v. Greencreek Highway District, *supra*, and counties, Henderson v. Twin Falls County, 56 Idaho 124, 50 P.2d 597 (1935). The restriction on sovereign immunity was further expanded to the state in certain areas in the cases of Renninger v. State, *supra*, and Grant Construction Co. v. Burns, *supra*.

A principal reason for the judiciary's difficulties when addressing itself to the question of sovereign immunity stem from the inadequate treatment (or complete lack of treatment) given this complex and intricate subject by the legislature. Ideally the subject should be dealt with by the legislature by a comprehensive legislative enactment. As stated in Brown v. City of Omaha, *supra*:

"We must recognize, however, that the doctrine of governmental immunity from tort liability underlies a very broad field and that the legislative process and pro-

cedures can be more effectively applied to a comprehensive solution, while the court's processes and procedures are more effectively directed to a solution more narrowly limited to specific facts framed in litigated cases." 183 Neb. 430 at 434, 160 N.W.2d 805 at 808 (1968). However a start must be made sometime had somewhere and since it was this Court which originally breathed life into the doctrine of sovereign immunity in the State of Idaho it falls within our province to snuff it out.

Turning now to the cases before the Court, there is no question that the plaintiffs in the Hopper case, No. 10315 (head-on collision between vehicle and bus because of the alleged failure to have a flagman stationed at his assigned post), have stated a valid cause of action to be heard in the district court. We deem the complaint in Hopper to allege a claim for relief under the criteria heretofore enunciated. Upon examining the specific facts of the Hopper case, it appears that serious physical harm and death were caused to individuals using the highway for a lawful purpose. The harm was allegedly caused by a condition on the highway, i. e., the failure to have a flagman posted at a strategic location, created or maintained by the state (It is alleged that the State of Idaho created and maintained such condition.). Should the state have realized that the condition involved an unreasonable risk of harm to those using the highways? "Unreasonable risk" has been defined as a risk of such magnitude as to outweigh the utility of defendant's conduct. Johnson v. Thompson, 111 Ga.App. 654, 143 S.E.2d 51 (1965). Unreasonable risk is such risk as a reasonable and prudent man would not take. Convery v. Ramsey, 176 Ill.App. 542 (1912). It is true the construction of a roadway is of great importance and utility to the public, but this is neither justification nor excuse for the alleged negligence of the state.

"A person responsible for a place, agency, instrumentality, or operation which is dangerous and likely to cause injury or damage must take due and suitable precautions to avoid injury or damage to persons or property rightfully in its proximity." 65 C.J.S. Negligence § 84, p. 1016.

The precautions taken by a person responsible for a dangerous place or instrumentality must be commensurate with the dangers to be apprehended and be sufficient under ordinary circumstances to prevent accidents and injuries. Midwest Oil Co. v. Storey, 134 Ind.App. 137, 178 N.E.2d 468 (1962). Furthermore the duty to anticipate injury and take protective action is measured in part by the seriousness of the danger. Vaillancourt v. Manchester Gas Co., 88 N.H. 95, 184 A. 353 (1936). Thus where the burden of precaution to be taken by the defendant is slight compared with the gravity of the harm sought to be avoided, it is unquestionable that the defendant has a duty to take effective precautions to prevent forseeable injury.

A United States District Court considered a similar problem and reasoned:

"'Chief among the factors [in any case] is the social value of the interest which the actor is seeking to advance,' Prosser, supra, p. 151. In this case, the government was undeniably engaged in operations of very great social value. The plaintiffs will have a correspondingly greater burden to point to other factors which might outweigh this important consideration. Gross failure on the government's part to take the simplest precautionary and safety measures would be decisive." Graci v. United States, D.C., 301 F.Supp. 947 (5 Cir. 1969).

The intention of the State of Idaho to have flagmen posted at each end of the work project was indeed commendable. However it was incumbent upon the state to assure itself that its directives were faithfully carried out. The state expressed its awareness of the seriousness of the danger inherent in the work it was doing by taking the precaution of stationing flag-

men to warn approaching motorists of the great danger. This it undertook to do of its own accord and was an express admission of the gravity of harm which could result if this precautionary measure was not taken. When the burden of precaution is viewed in relationship to the harm sought to be avoided by imposing such burden on the defendant, it is evident that the burden falling upon the defendant in this case was negligible. With a small amount of effort and at nominal economic cost, the state might well have prevented the tragic consequences of its negligent act.

Regarding the issue of whether or not the State Highway Department should have anticipated that an individual using the highway would not discover or realize the danger, from the allegation it appears that there was virtually no manner for those proceeding in a work zone to inform themselves or to ascertain that no flagman was posted at a strategic position. We need not inquire as to whether or not the state failed to make the condition safe because it is apparent the state did not correct the condition, nor warn of its dangerous character. On its face the complaint in Hopper, No. 10315, states a cause of action in negligence against the state. Again we emphasize that we express no opinion as to the merit of plaintiffs' allegations but merely that a valid cause of action has been alleged.

█ With respect to Smith v. State, Nos. 10290, 10285 (alleged defect in construction of curve and roadway surface causing vehicle to skid) and Murphy v. State, No. 10388 (vehicle which skidded on icy bridge spanning warm sewer water because of the alleged failure of the state to remedy the dangerous situation or at least post warnings of its existence), without attempting to discuss each of these cases individually and applying the standard of care heretofore enumerated to each

of them we have determined from the complaints in both of these cases that a prima facie claim has been alleged against the state, since it appears that a dangerous condition was created or allowed to remain by the Highway Department as heretofore defined.

█ We now address ourselves to the contention of the Department of Highways that pursuant to the Idaho Constitution[12] the relief sought by the plaintiffs in each of the three cases is precluded at the district court level. This Court in the recent case of Grant Construction Co. v. Burns, *supra*, stated in an action brought against the state for breach of contract that the state incurs legal rights and responsibilities similar to those of the individual citizen, and that an action for breach of contract against the state may be brought in the district court, which is a proper tribunal for adjudicating all cases in law and equity. Art. 5, § 20 of the Idaho Constitution provides:

> "The district court shall have original jurisdiction in all cases, both at law and in equity, and such appellate jurisdiction as may be conferred by law."

Art. 5, § 10 of the Idaho Constitution does not prohibit the district court from having jurisdiction to determine tort claims against the state.

This Court in the case of Renninger v. State, *supra,* in construing Art. 5, § 10 of the Idaho Constitution stated:

> " * * * to force him [claimant] for relief to file a suit for recommendatory judgment, Art. 5, Sec. 10, before the Supreme Court, almost denies relief because such procedure is uncertain, problematical, dilatory, and based purely on sufferance and not on right. Curtis v. Moore, 38 Idaho 193, 221 P. 133." Renninger v. State, *supra,* 70 Idaho at 177, 213 P.2d at 915, 916.

---

12. Idaho Const., Art. 5, § 10.
"Jurisdiction over claims against the state.—The Supreme Court shall have original jurisdiction to hear claims against the state, but its decision shall be merely recommendatory; no process in the nature of execution shall issue thereon; they shall be reported to the next session of the legislature for its action."

It is meaningless to grant a right without a remedy. We therefore hold that the district court is the proper tribunal for adjudication of claims against the state in tort for conduct complained of which is negligent.[13]

 This holding will govern all future causes of action arising on or after 60 days subsequent to the adjournment of the First Regular Session of the Forty-First Idaho State Legislature unless legislation is enacted at that session with respect to the abolition of the sovereign immunity of the state. However the cases involved in this opinion are governed by the holdings of this Court as it pertains to them and the parties may proceed with their claims in the district court. Since the legislature considered the question of abolition of the state's sovereign immunity at both its last session (Second Regular Session of the Fortieth Idaho Legislature) and the session held previous to that (First Regular Session of the Fortieth Idaho Legislature) it is evident that the legislature is aware of the injustice created by the doctrine of sovereign immunity. We are basing our decision postponing the operative effect of the decision also on the fact that since the Department of Highways and other governmental agencies have relied upon the doctrine of sovereign immunity it is quite possible that they will suffer undue hardship if the abolition of the doctrine of sovereign immunity was to take effect immediately. Molitor v. Kaneland Community Unit District No. 302, supra. Limiting a decision which overrules an established precedent so that it has a prospective application only, does not violate constitutional principles. Great Northern R. Co. v. Sunburst Oil & Ref. Co., 287 U.S. 358, 53 S.Ct. 145, 77 L. Ed. 360 (1932). In that case the United States Supreme Court decided that there was no constitutional objection to a state court's making a choice for itself in overruling a decision, whether the new rule declared by it shall operate prospectively only or apply also to past transactions. See Annot. 85 A.L.R. 263 at 263.

"We have no occasion to consider whether this division in time of the effects of a decision is a sound or an unsound application of the doctrine of stare decisis as known to the common law. Sound or unsound, there is involved in it no denial of a right protected by the Federal Constitution. * * *.

We think the Federal Constitution has no voice upon the subject. A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions." Great Northern R. Co. v. Sunburst Oil & Ref. Co., supra, at 364, 53 S.Ct. at 148. A commentator referring to the Sunburst Oil case noted:

"That Court, in the instant litigation, wisely regarded the problem as one in judicial discretion rather than in constitutional law and determined to continue in its policy of leaving the state courts to work out independently of constitutional exactions, as they are now endeavoring to do their own conceptions of 'the binding force of precedent' and 'the meaning of the judicial process.'" 42 Yale L.J. 779 at 782 (1933).

Furthermore numerous other cases have endorsed the concept of prospective overruling.[14]

---

13. Idaho Constitution, Art. 5, § 20.

14. Gelpcke v. City of Dubuque, 68 U.S. 175, 17 L.Ed. 520 (1864) ; Harmon et al. v. Auditor of Public Accounts, 123 Ill. 122, 13 N.E. 161 (1887) ; Davies Warehouse Co. v. Bowles, 321 U.S. 144, 64 S.Ct. 474, 88 L.Ed. 635 (1944) ; People ex rel. Attorney General v. Salomon, 54 Ill. 39 (1870) ; State v. Jones, 44 N.M. 623, 107 P.2d 324 (1940) ; Continental Supply Co. v. Abell, 95 Mont. 148, 24 P.2d 133 (1933) ; Hare v. General Con. Purchase Corp., 220 Ark. 601, 249 S.W. 2d 973 (1952).

■ We further find that the members of the Highway Department cannot be held individually liable for acts which they have not personally performed. Coldwater v. State Highway Commission, 118 Mont. 65, 162 P.2d 772, 773 (1945); Stone v. Arizona Highway Commission, *supra*. This determination is also consistent with Idaho cases. Worden v. Witt, 4 Idaho 404, 39 P. 1114 (1895); Youmans v. Thornton, 31 Idaho 10, 168 P. 1141 (1917).

■ Elwyn Smith and Morrie Smith, Randy Smith and Kelly Smith, Minors, through their Guardian Ad Litem, Kathleen Prentice v. The State of Idaho, No. 10285, dismissed because it alleges a cause of action identical with case No. 10290. Costs to defendant.

Elwyn Smith and Morrie Smith, Randy Smith and Kelly Smith, Minors, through their Guardian Ad Litem, Kathleen Prentice v. Duffy Reed Construction Co., an Idaho Corporation, John Doe, Jack Doe, and Jane Doe and the State of Idaho, No. 10290, reversed with respect to the dismissal of the complaint against the State of Idaho. Costs to appellants.

James W. Hopper, individually, and as Guardian of the Estates of Rachel Jane Hopper and Rebecca Estelle Hopper v. The Idaho Board of Highway Directors and Doyle Symms, C. Ed Flandro and Ernest F. Gaffney, the members of the Idaho Board of Highway Directors, No. 10315, reversed. Costs to appellants.

Maurice Murphy and Zelda Murphy, husband and wife, and Maurice Murphy as Guardian Ad Litem for Thomas Murphy v. The Department of Highways, a civil department of the State of Idaho, Doyle Symms, Ernest F. Gaffney, and C. Ed Flandro as the Board of Directors for the Department of Highways, Blaine Sessions, Doyle Symms, Ernest F. Gaffney and C. Ed Flandro, Individually. Reversed. Costs to appellants.

McQUADE and SPEAR, JJ., concur.

McFADDEN, Chief Justice (dissenting).

It is my opinion that the trial courts in the cases involved on this appeal correctly held that no claim for relief was stated as against the defendants because of the immunity of the state from suit. It is my further opinion that the original action filed with this court should also be dismissed. My reasons for reaching this conclusion are following.

As recently as 1967 this court has steadfastly adhered to the rule

"That the State of Idaho and any of its subdivisions or departments, such as the Board of Highway Directors, are immune from liability for the torts of their employees unless such immunity has been waived to the extent of liability insurance obtained by the State or its subdivision * * *. Davis v. State, 30 Idaho 137, 163 P. 373; State v. Parsons, 58 Idaho 787, 80 P.2d 20; Pigg v. Brockman, 79 Idaho 233, 314 P.2d 609; and Bare v. Department of Highways, 88 Idaho 467, 401 P.2d 522. Particularly applicable is the following language from Bare v. Department of Highways, supra:

" 'The Department of Highways is an administrative department of the state government. I.C. § 40-411. In the absence of consent or waiver of sovereign immunity by the legislature, neither the highway department, nor any of its officers or agents, can subject the state to tort liability. The only liability for damages which can be imposed upon the state, in a case such as this, is that imposed by the constitution, art. 1, § 14, incident to the taking of private property for a public use.' " (Spear, J., in Gates v. Pickett & Nelson Constr. Co., 91 Idaho 836, at 840, 432 P.2d 780, at 784 (1967)).

In 1964, Justice McQuade, in the opinion in Petersen v. State, 87 Idaho 361, 393 P.2d 585 (1964), stated:

"The following propositions appear to be well recognized by both parties to this appeal: (1) The State of Idaho cannot be sued without its express consent, Hollister v. State, 9 Idaho 8, 71 P. 541 (1903); Thomas & Faris v. State, 16 Idaho 81, 100 P. 761 (1909); (2) This consent must be found in constitutional

or statutory provisions, Pigg v. Brockman, 79 Idaho 233, 314 P.2d 609 (1957); (3) A statute authorizing suit against the state is in derogation of sovereignty and therefore must be strictly construed, Pigg v. Brockman, supra." 87 Idaho at 363, 393 P.2d at 586.

In Petersen v. State, supra, it was determined that the state by the provisions of I.C. § 7-703 has given its consent to be sued in condemnation proceedings.

As early as 1877, in Gorman v. Commissioners of Boise County, 1 Idaho 655, the territorial supreme court held that a county was not liable for erroneous action of the board of county commissioners. It is stated therein:

"It is urged that the board of commissioners acted in violation of their duties in appointing Davis to the office, which legally belonged to appellant, and in doing so a wrong was committed by which he suffered injury. Conceding that their action was erroneous, and that appellant was wronged thereby, still the county cannot be made responsible for it. Counties are created *in invitum,* for certain political or governmental purposes. They are but parts of the machinery by which the affairs of the people are conducted, and they stand in the same relation to the agents which they are obliged to select in aid of the public services as the government of which they are parts, and can no more be held responsible for their acts than can the entire government. * * * *." 1 Idaho at 659.

Following adoption of the constitution and statehood in 1890, this court in Worden v. Witt, 4 Idaho 404, 39 P. 1114 (1895), held that county commissioners are not individually liable in damages for injuries sustained by reason of defective highways under the laws of Idaho. In that case, commenting upon the decision of Gorman v. Commissioners of Boise County, supra, this court stated:

"To hold counties or county commissioners liable for all injuries arising from defective highways, in this country, would result in two very undesirable conclusions,—the literal abrogation of the office of county commissioners (for no sane man would assume the position, with such a liability attached), and the bankruptcy of every county in the state. Had there been any intention on the part of the legislature to impose such a liability upon the county commissioners, they would have said so, by unequivocal enactment. The supreme court of Idaho, in Gorman v. Commissioners [of Boise County], 1 Idaho 655, settled the question of the liability of both the county and the county commissioners in this jurisdiction, and with that decision we concur." 4 Idaho at 407, 39 P. at 1115.

Set forth in the footnote below are other cases from this court reiterating the rule that in the absence of a constitutional or statutory waiver of immunity neither the state nor its subdivisions is liable for torts of its agents.[1] This is in accord with the rule followed by a majority of the courts in this country.[2]

1. State ex rel. Walton v. Parsons, 58 Idaho 787, 80 P.2d 20 (1938); Nordby v. Dept. of Public Works, 60 Idaho 475, 92 P.2d 789 (1939); Bare v. Dept. of Highways, 88 Idaho 467, 401 P.2d 552 (1965); Gates v. Pickett and Nelson Constr. Co., 91 Idaho 836, 432 P.2d 780 (1967); Pigg v. Brockman, 79 Idaho 233, 314 P.2d 609 (1957); Strickfaden v. Greencreek Highway Dist., 42 Idaho 738, 248 P. 456 (1926).

2. Wallace v. Bd. of Ed. of Montgomery County, 280 Ala. 635, 197 So.2d 428 (1967); Roesler v. Denton, 239 Ark. 462,

390 S.W.2d 98 (1965); Berger v. Dept. of Highways, 143 Colo. 246, 353 P.2d 612 (1960); Faber v. Dept. of Highways, 143 Colo. 240, 353 P.2d 609 (1960); Wilmington Housing Authority v. Williamson, 228 A.2d 782 (Del.1967); Pereira v. State Road Dept., 178 So.2d 626 (Fla. App.1965); Valdez v. State Road Dept., 189 So.2d 823 (Fla.App.1966); Strickland v. Wellons, 116 Ga.App. 252, 157 S.E.2d 76 (1967); Clark v. State Dept. of Labor, 71 Ill.App.2d 365, 219 N.E.2d 143 (1966); Bracht v. Conservation Comm., 118 Ind.App. 77, 76 N.E.2d 848 (1948); Parker v. City of Hutchinson,

The most recent pronouncement of this court in the area of governmental immunity from suit is to be found in Grant Constr. Co. v. Burns, 92 Idaho 408, 443 P.2d 1005 (1968). It is stated in that opinion:

"We have held that the state cannot be sued without its consent, and that such consent cannot be implied but must be expressly given by constitutional or statutory provisions. [citing cases]

"We have recognized, however, that our constitutional provision prohibiting the taking of property for public use until just compensation has been paid waives the immunity of the state from suit where the state took or damaged the property without first condemning it. [citing cases]." 92 Idaho at 412, 443 P.2d at 1009.

This court then quoted at length from Carr v. State ex rel. Du Coetlosquet, 127 Ind. 204, 26 N.E. 778 (1891), and stated

"Courts in other jurisdictions are in accord with the ruling of the Supreme Court of Indiana and have held, in effect, that where the legislature has by statute authorized the state to enter into certain contracts, the state upon entering into such a contract thereby consents to be sued if it breaches the contract to the damage of the other contracting party

[citing cases]." 92 Idaho 412, 443 P.2d 1009.

This court then stated

"We agree with this principle. To deny the right to sue in such a contractual situation would be to deprive the damaged contracting party of property without due process of law. U.S.Const. Amendments 5 and 14. Accordingly, we hold that where, as here, the state has entered into a contract pursuant to legislative authorization, the state has consented to be sued for alleged breaches of its contractual responsibilities and cannot invoke the protection of sovereign immunity." 92 Idaho at 413, 443 P.2d at 1010.

Nowhere has there been pointed out any authority, statutory or constitutional, which would authorize the maintenance of the actions involved in this appeal.

Throughout the history of the law of Idaho, this court has recognized areas in which various governmental agencies properly should be held liable for the torts of their agents. Cities are liable for maintenance of their streets. Eaton v. City of Weiser, 12 Idaho 544, 86 P. 541 (1906); Moreton v. Village of St. Anthony, 9 Idaho 532, 75 P. 262 (1904); Carson v. City of Genesee, 9 Idaho 244, 74 P. 862 (1903);

196 Kan. 148, 410 P.2d 347 (1966); Jones v. Maine State Highway Comm., 238 A.2d 226 (Me.1968); State to Use of Watkins v. Rich, 126 Md. 643, 95 A. 956 (Md.1915); Smith v. Commonwealth, 347 Mass. 453, 198 N.E.2d 420 (1964); Curtis v. Miss. State Highway Comm., 195 So.2d 497 (Miss.1967); Luttrell v. State Highway Comm., 379 S.W.2d 137 (Mo. App.1964); Coldwater v. State Highway Comm., 118 Mont. 65, 162 P.2d 772 (1945); Shear v. State, 117 N.W. 865, 223 N.W. 130 (1929); New Hampshire Water Resources Bd. v. Pera, 108 N.H. 18, 226 A.2d 774 (1967); Schuschel v. Volpe, 84 N.J.Super. 391, 202 A.2d 218 (1964); Township of Springfiel1 v. New Jersey State Highway Dept., 91 N.J. Super. 567, 221 A.2d 766 (1966); Lucero v. New Mexico State Highway Dept., 55 N.M. 157, 228 P.2d 945 (1951); Atlantic Coast Line R. R. Co. v. State Highway

Comm., 268 N.C. 92, 150 S.E.2d 70 (1966); Davis v. North Carolina State Highway Comm., 271 N.C. 405, 156 S.E. 2d 685 (1967); Heasley v. State, 115 N.W.2d 334 (N.D.1962); West Park Shopping Center, Inc. v. Masheter, 6 Ohio St.2d 142, 216 N.E.2d 761 (1966); Rader v. Penn. Turnpike Comm., 407 Pa. 609, 182 A.2d 199 (1962); Darnall v. State, 79 S.D. 59, 108 N.W.2d 201 (1961); Fonseca v. State, 297 S.W.2d 199 (Tex. Civ.App.1956); State v. Noser, 422 S.W. 2d 594 (Tex.Civ.App.1967); Wilson v. State Highway Commissioner, 174 Va. 82, 4 S.E.2d 746 (1939); Elizabeth River Tunnel Dist. v. Beecher, 202 Va. 452, 117 S.E.2d 685 (1961); State ex rel. Adkins v. Sims, 130 W.Va. 645, 46 S.E.2d 81 (1947); Price v. State Highway Comm., 62 Wyo. 385, 167 P.2d 309 (1946).

Village of Sandpoint v. Doyle, 11 Idaho 642, 83 P. 598 (1905). Highway districts are liable for negligence in maintenance of their roads. Strickfaden v. Greencreek Highway Dist., 42 Idaho 738, 248 P. 456 (1926). And cities and counties are liable for torts in areas of a so-called "proprietary" nature. Eaton v. City of Weiser, supra; Henderson v. Twin Falls County, 56 Idaho 124, 50 P.2d 597 (1935); Strickfaden v. Greencreek Highway Dist., supra; Lundahl v. City of Idaho Falls, 78 Idaho 338, 303 P.2d 667 (1956); Gilbert v. Village of Bancroft, 80 Idaho 186, 327 P.2d 378 (1958).

In 1947 the legislature enacted a bill requiring all school buses to carry liability insurance. As a part of the bill the policy contract waived governmental immunity to the extent of the insurance. S.L.1947, Ch. 263, p. 768. See I.C. § 33–1507 regarding similar provisions.

The legislature of this state in 1955 also enacted S.L.1955, Ch. 146, which waived governmental immunity to the extent of any liability insurance. This first enactment was repealed and then re-enacted at the time of the codification, consolidation and revision of the insurance laws of this state. S.L.1961, Ch. 330. I.C. §§ 41–3504, 41–3505, and 41–3506.

I.C. § 41–3505 is, to my mind, a statutory recognition of the governmental immunity doctrine. That section states:

*"Immunity of the state of Idaho, any department, board, agency, or institution thereof, or any other political subdivision of the state of Idaho, including municipalities or specially chartered subdivisions, against liability for damages,* is hereby waived to the extent of the liability insurance carried by the state of Idaho \* \* \*." (Emphasis added.)

By enactment of this section the legislature did in fact recognize the existence of the defense of governmental immunity. . .

Because of the long line of authority in this state as evidenced by the numerous opinions from this court to the effect that governmental immunity is a defense in actions of the nature now before the court, unless such governmental immunity has been waived by consent evidenced by statutory or constitutional authority, and because of the provisions of I.C. § 41–3505, it is my conclusion that the issue now before the court is one reserved to the legislature for action. The majority opinion, contrary to the express provisions of Idaho Const. Art. 2, § 1, which states,

"The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted."

is entering upon a field that this court has always previously recognized as one reserved to the legislature. Our attention has not been called to any constitutional provision which expressly directs or permits this court to depart so radically from its previously uniform holdings, recognized by the legislature, that the state's consent to be sued must "be expressly given by constitutional or statutory provisions."

One other feature of this case is worthy of comment. Abolishing the doctrine of governmental immunity, as the majority opinion has done, would mean that in certain cases litigants might eventually recover a judgment against the state. Immediately a question is presented as to how such a judgment will be satisfied. The majority opinion fails to consider this aspect of the problem. While the majority opinion cites and relies upon Bell v. Presbytery of Boise, 91 Idaho 374, 421 P.2d 745 (1966), as authority in support of abolishing the defense of governmental immunity, there is one major distinction between the situation in that case and in the instant cases. In that case, any judgment recovered could be satisfied from property of the defendant. In a case such as the pres-

ent one, however, without a legislative appropriation of funds, such a judgment in favor of the claimant could not be satisfied. See Idaho Const. Art. 5, § 10; Art. 7, § 13. See also State ex rel. Walton v. Parsons, 58 Idaho 787, 80 P.2d 20 (1938); Molitor v. Kaneland Community Unit Dist. No. 302, 18 Ill.2d 11, 163 N.E.2d 89 (1959), dissenting opinion of Davis, J., 163 N.E. 2d 98 at 101.

There have been numerous articles written attacking the foundation of the doctrine of sovereign immunity.[3] In an individual case it is recognized that injustice may be done where a claimant is barred from recovery because of such a doctrine, and comparisons, which effectively reflect the great injustice, may be made between a claimant suing the state or a department or branch of government and the situation in which a defendant might have been an individual or corporate entity. Nonetheless this doctrine of immunity has been a part of the law of this state for many decades. In the final analysis, the people of this state have only in part accepted the responsibility for injury to others, and even then generally through legislative action in waiving governmental immunity in those instances where liability insurance is provided. Until such time as the legislature, as the representatives of the electors and residents of this state, expand this waiver of governmental immunity, this court should adhere to the doctrine. It is for the legislature, not for the court, to make this change in policy.

SHEPARD, J., concurs in the foregoing dissenting opinion.

McFADDEN, Chief Justice, dissenting on denial of petition for rehearing.

A petition for rehearing has been presented in this case. The majority of the court has withdrawn the opinion previously issued and to which I filed my dissent, with which Shepard, J., concurs. I adhere to the views expressed in that dissent and file this further dissent to the opinion of the majority as modified on denial of the petition for rehearing.

The majority opinion states:

"* * * we hereby hold that the doctrine of sovereign immunity is no longer a valid defense in actions based upon tortious acts of the state or any of its departments, political subdivisions, counties or cities, where the governmental unit has acted in a proprietary as distinguished from a governmental capacity. * * * The construction and maintenance of highways is a proprietary function and has been held so by this Court: [citations omitted.]."

In support of that statement, the majority relies upon the following cases: Eaton v. City of Weiser, 12 Idaho 544, 86 P. 541 (1906); Carson v. City of Genesee, 9 Idaho 244, 74 P. 862 (1903); Strickfaden v. Greencreek Highway Dist., 42 Idaho 738, 248 P. 456 (1926); Lively v. City of Blackfoot, 91 Idaho 80, 416 P.2d 27 (1966). It is recognized that cities and highway districts in the construction and maintenance of highways do act in a proprietary capacity. However, it does not follow that the sovereign state in construction and maintenance of highways acts in such capacity.

In Ada County v. Wright, 60 Idaho 394, 92 P.2d 134 (1939), this court stated:

"Moreover the building and maintenance of the roads and highways by the state is one of the sovereign duties of government: * * *

* * * * * *

Before passing to the next specification, we again observe that there is a vast difference between the legal status of state highways on the one hand, and county and district highways, and streets and alleys of cities and villages. The necessity for roads lies at the foundations

3. Borchard, "Governmental Responsibility for Tort," 34 Yale L.J. 1 (1924); Casner & Fuller, "Municipal Tort Liability in Operation," 54 Harv.L.Rev. 437 (1941); Shumate, "Tort Claims Against State Governments," 9 Law & Contemp. Prob. 242 (1942); Maguire, "State Liability for Tort," 30 Harv.L.Rev. 29 (1916).

of civil government. (29 C.J., p. 364, note 8(d).) In a representative government the people exercise the elective franchise and they must reach the voting places; they must reach the seat of county government to discharge their duties as jurors and taxpayers, and transact county business; and they must have their mail and reach their markets for purposes of purchase and sale; they must also have roads over which they may travel to the seat of state government. All the major activities of daily life require thoroughfares for travel, and they are likewise necessary for use by peace officers in maintaining the public peace and private safety of the citizens. The United States government recognizes this public governmental duty in declaring certain roads as post roads and military highways for the movement of mails and troops and the dissemination of public intelligence. [citations omitted.] [60 Idaho at 406–407, 92 P.2d at 139–140.]

\* \* \* \* \* \*

"\* \* \* that building and acquiring roads and highways is of a highly public and governmental nature when conducted by the state in its sovereign capacity \* \* \*." 60 Idaho at 409, 92 P.2d at 141.

In Nordby v. Department of Public Works, 60 Idaho 475, 92 P.2d 789 (1939), the plaintiff sought dámages against the department of public works for loss of cured and growing grass caused by fire which originated from a right of way of the department of public works on Lewiston Hill. This court upheld a demurrer to the complaint, stating:

"The record presents the question: Is the state liable in damages for alleged negligent acts of its officers and em-

ployees performed while in the discharge of a *mandatory, governmental* duty? [emphasis supplied.]

"It is settled law in this state, in the absence of an express statute (as in Idaho) to that effect, the State is not liable for damages for negligent acts of its officers and employees performed in the discharge of a mandatory governmental duty. (citations)." 60 Idaho at 478, 92 P.2d at 790.

In Villages of Eden & Hazleton v. Idaho Bd. of Highway Directors, 83 Idaho 554, 367 P.2d 294 (1961), this court stated

"In 40 C.J.S. Highways § 177, p. 25, is enunciated the rule, well supported by authority, that the construction, maintenance, and repair of public highways is a governmental function which belongs primarily to, and may be exercised by, the state and the state legislature, and that the duty of performance of such work may be conferred or imposed upon a designated officer, body, or agency, such as a state highway department, commission, commissioner, or director, or a state department of public works." 83 Idaho at 564, 367 P.2d at 300.

The majority opinion in holding that construction and maintenance of a highway is a "proprietary function" is ignoring the sovereign capacity of the state, and overlooks the distinction between the role of the city, or highway district, as compared to the role of the state in relationship to the state highways.

Again I repeat that the judgments of dismissal should be affirmed.

SHEPARD, J., concurs.